For these reasons, I concur in the judgment of the court.

**Darlene JENKINS, Plaintiff–Appellant,**

v.

**George W. HEINTZ and Bowman, Heintz, Boscia & McPhee, Defendants–Appellees.**

No. 96–3410.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1997.

Decided Aug. 26, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 23, 1997.*

* Circuit Judges Ripple, Rovner, and Diane P. Wood voted to grant rehearing en banc.

Daniel A. Edelman, Cathleen M. Combs, Michelle A. Weinberg (argued), James O. Latturner, Danielle R. Gomez, John J. Simonetti, Edelman & Combs, Chicago, IL, Joanne Faulkner, New Haven, CT, for Plaintiff-Appellant.

George W. Spellmire, Bruce L. Carmen (argued), D. Kendall Griffith, David M. Schultz, Hinshaw & Culbertson, Chicago, IL, for Defendants-Appellees.

Before RIPPLE, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

Darlene Jenkins bought a car. The sales contract required that she maintain certain insurance on it. According to the bank to which the sales contract was assigned, Jenkins failed to take out the proper insurance, so the bank took it out for her. Jenkins could not make all the payments on her car loan, and the defendants, who are collection lawyers, sued Jenkins in Illinois state court to recover the deficiency, including the insurance premiums. Jenkins countersued the collection lawyers in federal court under the Fair Debt Collection Practices Act, 15 U.S.C. § 1601 *et seq.* ("FDCPA" or "the Act"), claiming that the insurance the bank procured was not authorized by the loan, and that the lawyers knew this when they attempted to collect the premiums, thereby violating the Act.

This case is before us a second time. The Supreme Court affirmed our first decision and determined that the FDCPA applies equally to debt collectors and lawyers engaged in consumer debt-collection litigation. The case is now before us to determine whether, by trying to collect the "force placed" insurance premiums, the defendants violated the Act. The district court granted the defendants summary judgment, concluding that Jenkins' evidence of defendants' knowledge and intent to violate the Act was insufficient to create an issue for trial. It also interpreted the Act's bona fide error provision and concluded that defendants' actions met the statutory requirements for a valid defense. We affirm.

I.

In July 1987 Darlene Jenkins signed a retail installment sales contract for the purchase of a car. The contract was assigned to what is now known as NBD Bank. She made only 35 of the 48 payments due, so the bank declared the loan in default and repossessed the car. The sale of the car did not cover the full amount of the debt. The bank retained the defendants' law firm to collect the deficiency, and it brought suit against her in Illinois state court on June 13, 1992 for the balance. Jenkins answered, filed affirmative

defenses, and counterclaimed, contending that the balance due included unauthorized charges for force placed insurance. Insurance is force placed when a contract holder (here the bank) compels a borrower (an automobile purchaser) to maintain physical damage insurance and charges the premium to the borrower. On July 9, 1992, shortly after the state court action was filed, defendant Heintz sent Jenkins' lawyer a settlement offer asking for $4,173 in premiums for this force placed insurance as well as $3,000 remaining on the principal balance of the loan (as well as some $1,000 in penalties).

Jenkins then sued attorney Heintz and his law firm for violating the Fair Debt Collection Practices Act by attempting to collect unauthorized amounts. Approximately half of the amount Heintz claimed in the letter that Jenkins owed consisted of the force placed insurance premiums. Jenkins complained especially about the lawyers' attempt to collect for the bank force placed "financial protection" insurance premiums, which covered the bank's expenses associated with the customer's default, such as repossession costs. Jenkins said that she never authorized such insurance, as evidenced by her copy of the loan agreement. She alleged that when Heintz included in his July 9, 1992 settlement letter a claim for force placed insurance premiums, he used "unfair or unconscionable means to collect or attempt to collect any debt" in violation of 15 U.S.C. § 1692f (which defines "unfair or unconscionable" to include adding amounts to a principal obligation not authorized by the agreement creating the debt or permitted by law), and falsely represented the character of her debt in violation of 15 U.S.C. § 1692e. Included among her allegations was a mention of the defendants' collection suit against her.[1]

In the previous round before the district court, the defendants moved to dismiss Jenkins' suit, arguing that attorneys who file suit to collect debts are not covered by the Act. The district court agreed and dismissed Jenkins' case. She appealed. This court reversed that decision, concluding that there was no longer an attorney exception to the FDCPA and that one would not be created by judicial fiat. 25 F.3d 536, 540 (7th Cir. 1994). The defendants petitioned for certiorari to the Supreme Court, which granted their request. 513 U.S. 959, 115 S.Ct. ·416, 130 L.Ed.2d 332 (1994).

The Supreme Court affirmed this court's decision. 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). The Court phrased the issue before it as "whether the term 'debt collector' in the [FDCPA] applies to a lawyer who 'regularly' *through litigation,* tries to collect consumer debts." *Id.* at 292, 115 S.Ct. at 1489 (emphasis in original). For two reasons, it found that the Act applied to lawyers engaged in consumer debt-collection. First, a lawyer who regularly attempts to obtain payment of consumer debts through legal proceedings meets the Act's definition of "debt collector": one "who regularly collects or attempts to collect, directly or indirectly, [consumer] debts owed ... another." *Id.* at 294, 115 S.Ct. at 1489 (quoting 15 U.S.C. § 1692a(6)). Second, in 1986 Congress repealed an exemption from this Act for attorneys without creating a narrower, litigation-related exemption. *Id.* at 294–95, 115 S.Ct. at 1489–91. The Court concluded: "[W]e agree with the Seventh Circuit that the Act applies to attorneys who 'regularly' engage in consumer-debt collection activity, even when that activity consists of litigation." *Id.* at 299, 115 S.Ct. at 1493.

On remand to the district court, and after Jenkins amended her complaint for the second time,[2] the defendants moved for summary judgment contending that they did not know the nature of the unauthorized insurance coverage—including for financial protection—and simply collected amounts which the bank claimed were due. They also raised the bona fide error defense of the FDCPA, 15 U.S.C. § 1692k(c). Jenkins disputed defendants' claim of lack of knowledge and information, the parties engaged in discov-

---

1. In its entirety, that allegation reads: "21. One such collection action demanding payment for the unauthorized insurance was filed against plaintiff."

2. The district court denied Jenkins' motion for class certification without, prejudice to resolve the substantive issues first.

ery, and Jenkins responded to defendants' motion.

The district court granted summary judgment to the defendants, holding that Jenkins' evidence of defendants' knowledge was insufficient to create an issue for trial. The district court also held that defendants' procedures for preparing suits were reasonably adapted to avoid the error of which Jenkins complains, and thus that the FDCPA's bona fide error provision exempted defendants from liability. It reasoned that the Act does not require attorneys to make an independent investigation of the information their client provided, and that counsel was entitled to rely on the bank's representations that the charges were legally valid and authorized under Jenkins' contract.

■■■ The district court had jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k. We review the district court's grant of summary judgment pursuant to 28 U.S.C. § 1291, and do so *de novo*, drawing all reasonable inferences in the light most favorable to the nonmovant. *Bass v. Stolper, Koritzinsky, et al.*, 111 F.3d 1322, 1323–24 (7th Cir.1997) (citations omitted). We are not required to "draw every *conceivable* inference [in the non-movant's favor], but only those that are reasonable." *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312–13 (7th Cir.1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987) (emphasis in original). "Summary judgment is proper only if there is no genuine (in the sense of reasonably contestable) issue of material (that is, potentially outcome-determinative) fact. Fed.R.Civ.P. 56(c)." *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir.1997).

## II.

■■■ "The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices.... In the most general terms, the FDCPA prohibits a debt collector from using certain enumerated collection methods in its effort to collect a 'debt' from a consumer." *Bass,* 111 F.3d at 1324. Section 1692k of the Act provides for civil liability against a debt collector who intentionally violates the Act; such a collector is absolved if the violation was unintentional and procedures were in place to prevent it:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). The defendants rested their summary judgment motion on this provision. Jenkins points to evidence in which she says the defendants knew they were collecting unauthorized insurance premiums; she asserts the district court erroneously decided this case as a matter of law despite a jury question about the defendants' knowledge and intent. She also argues that the district court misconstrued the bona fide error provision and misapplied it to defendants' actions.

We begin by noting one assumption. Whether or not the bank was authorized to or did force place financial protection insurance on the car Jenkins purchased is not at issue. For purposes of their motion, defendants did not contend that the force placed insurance was validly imposed under Jenkins' sales contract. Rather, they argued that even if some of the force placed insurance charges were unauthorized, they are not liable because they never examined whether the bank obtained authorized or unauthorized charges. Thus, in our review of defendants' motion we will assume, without deciding, that the force placed insurance the bank procured was not authorized under Jenkins' sales contract.

### A. *Issue of Knowledge or Intent*

The collection attorneys aver that they did not know what type of insurance the bank force placed on Jenkins' car. They do so primarily through the affidavit of Glen Vician, the law firm's chief executive officer. They say they were retained only to collect amounts the bank claimed were due, and that at no time did any of their attorneys, employees, or agents have any information or dis-

cussions with the bank concerning the nature or extent of the insurance coverage the bank obtained pursuant to its loan contracts. Jenkins asserts the defendants knew the insurance premiums they were collecting included unauthorized coverages, and thus that they intentionally violated the Act. Jenkins labels Vician's affidavits hearsay, contradicted by documents (unearthed through a protracted discovery battle) which she says demonstrate that the firm knew of the problems associated with force placed insurance. At least, Jenkins argues, this evidence raises a genuine issue of material fact entitling her to the jury trial she requested. The district court reviewed this evidence in detail, but concluded that it did not get Jenkins past summary judgment. We engage in the same examination.

### 1. December 5, 1990 opinion letter.

■ Jenkins asserts that the strongest evidence against the defendants is a 1990 opinion letter from attorney Thomas Burris of defendants' law firm to a vice president at the bank with the heading: "Requested Analysis of Gainer Bank Policy of Force Placed Collateral Insurance on Consumer Loans." In this seven-page letter, the defendants provided the bank legal advice to "keep the collateral fully insured against loss or damage." The letter describes how force placed insurance works, and then discusses the provision of Indiana law under which force placed insurance is legal. It also treats the terms of the contracts between the bank and its borrowers (but not the terms and coverages of any insurance for which borrowers were allegedly improperly charged). Jenkins points out one portion of the letter:

> As a practical matter, over the past several years FPCI [force placed collateral insurance] has become a litigation hot spot. Today, we see more and more deficiency balances made up primarily of force placed premiums. We have also litigated a number of counterclaim matters which were based on the legality of FPCI provisions in consumer loan contracts. Too [sic] date, we have been successful on behalf of the lenders in enforcing such provisions, however, the current scrutiny given to the Mellon Bank situation offers us ample en-

couragement to review our current provisions and practices with regard to forced placing insurance.

Burris then suggests some drafting changes to the bank's standard form contract relating to force placed insurance, and proposes that a firm lawyer meet with a bank representative to coordinate those changes. The "Mellon Bank situation" referenced was a force placed insurance case which resulted in a publicized settlement.

To Jenkins, Burris' statement that force placed insurance was a "litigation hot spot," as well as his awareness that the *Mellon Bank* case had heightened scrutiny of banks' insurance practices, meant that defendants knew "of the problematic nature of the insurance." We have examined the letter line-by-line, and have drawn all reasonable inferences in Jenkins' favor, but we cannot agree with her conclusion that the letter shows the defendants knew that some of the insurance coverage force placed upon Jenkins was unauthorized by her loan contract.

. The opinion letter never addressed the type of force placed insurance policy to be purchased, or whether financial protection force placed insurance was authorized by the contract language. The "General Facts and Definitions" section of the letter defines force placed insurance as "comprehensive/collision insurance covering motor vehicles given to the bank as security on consumer loans"; both examples in the opinion letter assume that the type of insurance coverage that would be force placed would be standard collision insurance, coverage required by state law. No mention is made in the letter of a "financial protection" variant. The letter's purpose seems to have been to advise the bank how to improve its contract to make its force placed insurance program generally enforceable and more understandable to the consumer, not to advise the bank how to recover the unpaid insurance premiums about which Jenkins complains.

As the district court correctly determined, too many assumptions would be necessary to conclude from the letter that anyone in defendants' law firm knew that the bank's force placed insurer may have been improperly

packaging financial protection coverage along with standard collateral protection insurance. At the least, a reasonable reader would need to be able to infer from the letter that Burris knew the bank's force placed insurance included coverage beyond collision insurance, or that the reference to the *Mellon Bank* case involved force placed insurance similar to the financial protection insurance at issue here. The lawyers knew that the bank force placed insurance generally—that is clear from the letter—but that is not enough to charge them with intentional violation of the FDCPA for force placing other than authorized insurance. None of Burris' opinions or statements implicate the amounts charged for force placed insurance, the types of coverage for which the borrower is charged, or unauthorized placements of this coverage. The letter assumes the insurance is necessary and legal and advises how to improve the contract to make it enforceable and understandable.

### 2. Published articles regarding *Mellon Bank* case.

In 1989, borrowers from Mellon Bank on whose motor vehicles the bank force placed property insurance to protect its collateral interest in the vehicles filed a class action lawsuit against the bank.[3] The suit included policies issued by Balboa Insurance, which was NBD Bank's force placed insurer. The case was the subject of an article in the June 4, 1990 edition of *Business Week* magazine[4] and two articles in the May 1991 volume of *Business Lawyer*.[5] According to the *Business Week* article, one of the numerous allegations in the *Mellon Bank* case was that some of Mellon Bank's force placed collateral insurance coverage was not authorized by the language of the underlying loan contract. The Business Lawyer articles discussed the *Mellon Bank* case generally. Jenkins contends that because the defendants' law library subscribed to these magazines during this time frame, the collection attorneys must

have known about the *Mellon Bank* case, and therefore that they should have known that the bank's financial protection force placed insurance policies were unauthorized under the sales contract.

Jenkins' claims of inferential knowledge from these articles is too speculative. None of the attorneys testified that they had read any of these articles, and Jenkins has proffered no evidence (for example, in the form of an admission at a deposition) to the contrary. Even if we assume that the defendants had read the articles, it does not establish that they knew that the way NBD Bank operated its force placed insurance program was unauthorized by the loan contracts. After all, some forms of force placed insurance are not only legal but often necessary. And although Balboa was the force placed insurer at issue in both cases, Jenkins has not shown the same policies were issued. Nor has Jenkins shown that defendants knew that the bank's contracts were the same or even similar to Mellon Bank's. Jenkins has not presented evidence that defendants knew the details of the *Mellon Bank* case and could or did know therefrom that NBD Bank's policies were unauthorized.

### 3. Other documents.

As evidence of defendants' intent, Jenkins also offers several documents that refer to the costs of "skip tracing" and repossession for which the bank was allegedly reimbursed pursuant to force placed insurance policies; documents in which, when consumers questioned force placed insurance amounts, defendants told them that the charges were due and owing; and documents which indicated that defendants continued to collect on these amounts even after this lawsuit raised doubt about the authority to collect these charges. From these records, Jenkins argues that defendants "must have known" that the force placed insurance cov-

---

**3.** *Baker v. Mellon Bank, N.A.*, No. 89–1326 (W.D. Pa., filed June 15, 1989).

**4.** Michael Schroeder, "Mellon Bank May Wish It Never Got Into This Business," *Business Week* 112, 1990 WL 2004131.

**5.** Barry A. Abbott and Helen Leslie, "Financial Institutions and Insurance in 1990: A Year of Accelerating Changes," 46 *Business Lawyer* 1275, 1285 (1991); Dwight Golann, "Beyond Truth In Lending: The Duty of Affirmative Disclosure," 46 *Business Lawyer* 1307, 1317 (1991).

ered more than mere collision or property loss.

Jenkins' argument is premised upon inferences from information largely not in defendants' possession. The Bates stamp numbers on these documents indicate that for the most part, the bank produced these documents, not the defendants. Jenkins has not offered evidence that the defendants did anything to help recover those reimbursements, or knew of or responded to those consumers' questions. There are many references in defendants' files (as well as in the bank's files) to the collection of force placed insurance, some of which was obviously legal and necessary. But there is no reference in a document generated by the defendants to the collection of premiums for force placed financial protection insurance. Therefore, it is not reasonable to conclude that the defendants intentionally attempted to collect an amount not authorized by the contract between Jenkins and the bank.

### 4. Vician affidavit.

■ Jenkins also attacks the evidence the defendants offered that its allegedly improper collection efforts were unintentional, primarily through challenging the affidavit of Glen Vician, the head of defendants' law firm. This affidavit stated that no one within the firm:

> had any information of any kind or character relating to the nature or extent of coverages in place with the insurance carrier or carriers providing collateral protection insurance or forced placed insurance on behalf of Gainer Bank/NBD, its predecessor banks, and/or including any coverages on the customers of Gainer/NBD or its predecessor banks and customers.

Vician made this statement "upon personal knowledge and/or the business records of the firm." Jenkins labels the affidavit hearsay because it repeatedly refers to the collective knowledge of the firm. Jenkins argues that Vician may not testify to the knowledge of other members in his firm without personal knowledge of each member's state of mind.

Although Jenkins is correct that Vician cannot testify to the knowledge of another of his firm's members, *see Price v. Rochford,* 947 F.2d 829, 832 (7th Cir.1991), he can and has permissibly made statements under oath concerning the firm's numerous business records, as well as his own knowledge as a firm partner who dealt chiefly with the bank. (We do not see the district court to have read the affidavit for more than that.) The defendants also included numerous other documents and deposition transcripts which supported Vician's conclusion. The other partners in the firm who dealt with the bank—Gerald Bowman, George Heintz, and Deborah McPhee—each testified in detail they did not know of any litigation or governmental investigations relating to a financial protection variant of force placed insurance.

■ Jenkins' challenge does not take into account basic summary judgment methodology. Once the defendants offered evidence—through the testimony of law firm members and organizational records-that they did not know the bank may have been bundling financial protection coverage with the force placed collateral insurance, and thus could not have intentionally collected such unauthorized premiums, the burden shifted to Jenkins to move beyond the pleadings and to set forth specific facts from which it might reasonably be inferred that the defendants did in fact know of the bank's allegedly improper practices. *Becker v. Tenenbaum–Hill Associates, Inc.,* 914 F.2d 107, 110 (7th Cir.1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Co.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). Jenkins has not done so. Viewing the evidence in the light most favorable to Jenkins, we can only conjecture that defendants knew the nature of the force placed insurance. But this is insufficient to deny a summary judgment motion. *See Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1127 (7th Cir.1996) ("Speculation is insufficient to withstand summary judgment...."). Jenkins is required to present evidence creating a reasonable inference, not a mere possibility.

Jenkins' argument boils down to an assertion that given the information she uncovered in discovery-the Burris opinion letter, the articles in defendants' law library, the bank's delinquent loan files—the defendants should

have known that the bank was force placing unauthorized coverage. If the FDCPA assigned liability for negligent behavior, Jenkins' case might survive. But far too many assumptions must be made before it would be reasonable to infer defendants actually knew, and then intentionally made a false representation as to the character of Jenkins' debt, as 15 U.S.C. § 1692 requires. Jenkins has failed to point to a genuine issue of material fact that defendants intentionally violated the FDCPA.

## B. *Bona Fide Error Defense*

Jenkins also claims that the district court misinterpreted and misapplied the bona fide error provision of the FDCPA, 15 U.S.C. § 1692k(c), and thus that defendants should not be permitted to invoke it.[6]

### 1. Statutory interpretation.

■ Jenkins contends that the bona fide error provision cannot be interpreted to cover errors of legal judgment by attorney debt collectors. She would limit the provision to clerical mistakes and other such ministerial errors, not one of legal judgment, as she alleged occurred here. Even if defendants did not act intentionally, she argues that the alleged violation constitutes a legal error for which § 1692k(c) provides no protection,[7] at least not for attorney debt collectors.

As noted below, errors in legal judgment are not an issue simply because the collectors are attorneys; nevertheless, there is no evidence that defendants exercised any legal judgment as to the validity of the force placed insurance charges. They were methodically processing a collection for a client's delinquent account. The evidence demonstrates that the defendants attempted to collect a charge for force placed insurance, not knowing that the charge included a financial protection component. Even if it were an issue, this does not show an error in legal judgment.

Even if there was evidence that these collection attorneys exercised legal judgment as to the validity of the force placed insurance charges, Jenkins' argument—that a legal (rather than clerical or factual) error vitiates the bona fide error defense—presumes that an attorney debt collector has an independent duty to assess the legality of the debt sought to be collected. To Jenkins, "[a]ttorney debt collectors have a duty to ensure that the amounts being collected are legally valid and authorized by contract"; "[d]etermining whether an item is a legally valid charge prior to filing suit for that amount is a task which attorneys must undertake. . . ." According to Jenkins' oral argument, defendants should have more deeply investigated the charges for the force placed insurance because the defendants are lawyers who sued her approximately one month before sending to her attorney the settlement letter complained of in her FDCPA complaint.

The text of the settlement letter indicates that the defendants acted in their capacity as debt collectors instead of as lawyers. By law (15 U.S.C. § 1692c(a)(2)), the collector must communicate with the consumer's attorney. Nevertheless, the letter to Jenkins' attorney seeks to "amicably resolve this matter" and lists documents enclosed in support of the bank's position that Jenkins had to insure the vehicle but did not, defaulted on her contract, and owed a certain amount of money. The letter concludes on a conciliatory note hoping "to reach some type of amicable practical resolution." The letter—the centerpiece of Jenkins' claim—has nothing lawyerly about it (except, of course, its letterhead). A collection agency could just as easily have written this attempt to settle the account. A debt collector should be able to negotiate a settlement even after a lawsuit is filed. Debt

---

**6.** *See supra* p. 828 for the text of 15 U.S.C. § 1692k(c).

**7.** Jenkins also analogizes the provision to a similar section in the Truth In Lending Act ("TILA"), 15 U.S.C. § 1640(c), which is limited to clerical mistakes and which does not include errors of judgment or law. But as the district court noted, the TILA bona fide error provision expressly defined bona fide errors as "clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error." 15 U.S.C. § 1640(c). The FDCPA provision does no such thing. This, along with the statutes' different purposes, distinguishes the two.

collection letters sent by lawyers on firm letterhead, albeit pre-suit, containing much harsher language than at issue here have been found not to violate the FDCPA. *See Terran v. Kaplan*, 109 F.3d 1428, 1430 (9th Cir.1997) (one-page letter typed on law office letterhead stating "[u]nless an immediate telephone call is made to ... a collection assistant in our office ... we may find it necessary to recommend to our client that they proceed with legal action" did not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt, and thus did not violate the FDCPA).

As for the sequence of filing the lawsuit then sending the settlement letter, we note that the second amended complaint showcases the letter as the demand for payment of an unauthorized amount, and grants the defendants' suit against Jenkins only a single sentence, failing to give its filing date or any particulars.[8] A fair reading of Jenkins' complaint is as a suit about the settlement letter—debt collecting—rather than about the state court collection action defendants filed—legal activity.

▮▮▮▮▮ Along with these factual hurdles, Jenkins' argument ignores that Congress in the FDCPA and the Supreme Court in its opinion in this case placed lawyers and lay debt collectors on equal footing. While a letter sent by an attorney after a lawsuit is filed arguably presupposes that the attorney-collector has put on a new hat and is now a litigator, not a collector, the Act still defines him as a collector, and the Supreme Court has confined the litigator to the standards of a collector. Filing a lawsuit does not insulate a lawyer from the restrictions of the Act, nor does it expose him to standards under the Act not applied to non-lawyer collectors. Rule 11 violations and other such claims must be pursued outside the Act.

▮▮▮▮▮ The FDCPA, as with all statutes, must be considered as a whole. *Beecham v. United States*, 511 U.S. 368, 372, 114 S.Ct. 1669, 1671, 128 L.Ed.2d 383 (1994) ("[W]e seek to discern [ ] the plain meaning of the whole statute, not of isolated sentences.").

Pursuant to Jenkins' reading, the Act would limit a debt collector to only collecting legally valid claims. But under this interpretation, there could not be a bona fide error for attempting to collect a claim not legally authorized by the contract with the debtor. So the bona fide error defense would be read out of the statute with respect to the violations of 15 U.S.C. §§ 1692e and 1692f alleged by Jenkins. It is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *Department of Revenue of Oregon v. ACF Industries*, 510 U.S. 332, 340–41, 114 S.Ct. 843, 848, 127 L.Ed.2d 165 (1994) (quoting *Mountain States Telephone & Telegraph Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985)).

Moreover, the Supreme Court in its previous opinion in this case read the FDCPA to bind attorneys who regularly engage in consumer debt collection "even when that activity consists of litigation." In the appeal to the Supreme Court, the defendant-attorneys requested a dispensation from the Act because they were litigating, not collecting. The Court inserted the "even when" phrase to underscore that collectors who litigate are still collectors subject to the Act. The irony should not be lost here that Jenkins successfully argued to the Supreme Court that attorneys and debt collectors should be treated the same under the Act, but she now advances that attorneys should be held to a separate, perhaps higher standard.

Filing suit, as defendants did here, should not give lawyers dispensation from the FDCPA; the law still applies to them. And it does not hold them to a different standard. The Act reads that debt collectors are not liable for attempting to collect validly certified amounts owed their client. It does not say that the collector's status as an attorney should add a requirement of independent legal analysis for each aspect of the creditor's claim, including a potential defense arising out of a somewhat arcane subject matter like force placed insurance. To require an attorney debt collector to conduct an independent

---

**8.** *See supra note 2.*

investigation into the legal intricacies of the client's contract with the consumer would create a double standard for the bona fide error doctrine based upon the identity of the collector. The language of the FDCPA does not provide for such a standard, and pursuant to the reasoning of our last opinion, 25 F.3d at 539–40, we will not impress such an understanding upon it. To interpret the FDCPA as not to treat lawyers and debt collectors equally would contort the statute's meaning, and ignore Congress' drafting and the Supreme Court's interpretation. In *Heintz*, the Court stated:

> The Act says explicitly that a "debt collector" may not be held liable if he "shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error." § 1692k(c). Thus, even if we were to assume that the suggested reading of § 1692e(5) is correct [harmfully anomalous results to litigating activities], we would not find the result so absurd as to warrant implying an exemption for litigating lawyers.

514 U.S. at 295, 115 S.Ct. at 1491. "... Congress intended that lawyers be subject to the Act whenever they meet the general 'debt collector' definition." *Id.* Lawyers meet the definition of debt collectors, even while litigating; thus the same standards apply to "attorney debt collectors" as apply to other debt collectors.

There is no stated exclusivity in the FDCPA as the means to redress collections errors. State law sanctions (the equivalent of Fed.R.Civ.P. 11) apply to defendants in their capacity as lawyers, and do so jointly with the Act. Those provisions preserve Jenkins' ability to seek redress for any errors in how defendants acted *qua* lawyers. *See, e.g., Terran v. Kaplan,* 109 F.3d at 1434.

### 2. Statutory application.

■ Jenkins also claims that the bona fide error defense has been misapplied in this case because the defendants failed to meet the preponderance of the evidence burden. To rely on bank employees to verify the nature of the force placed insurance coverage was not reasonable, she contends. Jenkins argues that the procedures the defendants' firm had in place are not reasonably adapted to prevent the particular error, as the statute requires, and therefore the collectors are liable for the violation.

The defendants have offered unrebutted evidence of the procedures they followed when preparing to file suit to collect a debt to avoid errors and omissions that could result in an FDCPA violation. These include the publication of an in-house fair debt compliance manual, updated regularly and supplied to each firm employee; training seminars for firm employees collecting consumer debts; and an eight-step, highly detailed prelitigation review process to ensure accuracy and to review the work of firm employees to avoid violating the Act. After suit is filed, the firm assigns an attorney to review all issues relating to a particular deficiency, and stops all collection efforts on a disputed balance before judgment to verify all disputed items with the client.

Jenkins does not dispute that the defendants performed each of these procedures. Instead, she sets the bar much higher. She would require debt collectors to investigate the charge for which recovery is sought; to "routinely investigate and evaluate the legal liability of the debtor for charges imposed by [defendants'] clients...." But for the same reasons discussed above in II.B.1, we do not adopt such a construction of the FDCPA.

■ Section 1692k(c) requires that the debt collector show by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. The district court correctly concluded that defendants' elaborate procedures meet this standard to avoid collecting unauthorized charges. They go so far as to insist that their client verify under oath that each of the charges was true and correct. Where defendants maintain extensive systems designed to prevent errors, an unintentional violation of the Act will not result in liability. *Dutton v. Wolhar,* 809 F.Supp. 1130, 1138 (D.Del.1992).

Defendants have satisfied their burden to prove this affirmative defense.

### III.

Jenkins did not present evidence from which a jury could reasonably conclude that the defendants knew of the unauthorized nature of the force placed insurance and intentionally falsely represented the character of Jenkins' debt. Nor given the letter of the FDCPA and the Supreme Court's opinion in this case will we hold the collection attorneys in this case to a separate standard than other debt collectors. The bona fide error provision, 15 U.S.C. § 1692k(c), applies to Jenkins' claim. For these reasons, the grant of summary judgment to the defendants is

AFFIRMED.

RIPPLE, Circuit Judge, dissenting.

I respectfully part company from my colleagues because, in my view, the majority opinion effectively contradicts both our own precedent and that of the Supreme Court of the United States. Indeed, the Supreme Court, in this very case, held that lawyers who regularly collect debts through the use of litigation are subject to the requirements of the FDCPA. Today, the majority goes a long way toward creating the very exemption for lawyers under the FDCPA that the Supreme Court, and this court in its earlier opinion, rejected. I also cannot agree with the majority's assessment of the record or its view of the applicability of the bona fide error defense.

Under the terms of the Act, a debt collector is not liable if the debt collector is able to show by a preponderance of the evidence that "the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k. Because the statute places the burden on the debt collector to establish this exemption, the debt collector—not the debtor as the majority appears to suppose—also has that burden on summary judgment.

1.

I first turn to the issue of whether the debt collector has established that it did not know of the client's improper practices.

The majority, assuming that Mrs. Jenkins has the burden on the matter, holds that Mrs. Jenkins has not "set forth specific facts from which it might reasonably be inferred that the defendants did in fact know of the bank's allegedly improper practices." *Ante,* at 831. Respectfully, I must disagree both with respect to the majority's shifting of the burden and with respect to the substance of the evidence.

The majority assesses the record by examining each evidentiary submission in vacuo and declaring that, standing alone, it is not sufficient to support a verdict in favor of Mrs. Jenkins. However, the evidence must be assessed not as if each submission existed in isolation, but in its totality. When assessed appropriately, the evidence would allow a jury to conclude that the defendants' alleged error was not unintentional. For example, in Burris' opinion letter to Gainer Bank, Burris provides the defendants' "legal analysis and formal opinion ... concerning Gainer Bank[']s current practice and use of 'Forced Placed Collateral Insurance' in the Consumer Loan contexts." R.107, Ex.3 at 1. From this language, a jury could reasonably infer that Mr. Burris was familiar with and knew the bank's "current practice and use" of FPCI. It would be quite unusual for an attorney to render a legal opinion on the bank's use of FPCI without knowing the nature of that practice and without examining the bank's contract with its FPCI insurer.

Further, in Burris' letter, he warns the bank that, in light of the "Mellon Bank situation," he and the bank should review the current provisions of its consumer loan contracts *and* its "practices with regard to forced placing insurance." *Id.* at 829. Again, it would be very strange for Burris to refer to the Mellon Bank situation in an opinion letter without at least a basic understanding of what that matter involved and how it was related to his client's situation. Indeed, Burris' use of this short-hand designation, the Mellon Bank situation, makes little sense un-

less both Burris and Stewart, the addressee of Burris' letter, already knew the nature of that litigation. Certainly, if his client did not know, one would expect that a lawyer would have elaborated further, especially with respect to the numerous allegations in the Mellon Bank complaint (many of which are similar to Mrs. Jenkins' allegations). Without such an explanation, Burris hardly could have expected the bank to determine whether a further review of its practices was warranted. Even if Stewart were ignorant of the Mellon Bank litigation, a jury could certainly infer from this letter that the letter evinced Burris' own knowledge of the Mellon Bank situation and its implications for Gainer Bank. In short, this letter hardly establishes the debt collector's burden of proof on the issue of whether the violation was unintentional.

The majority also rejects precipitously the possibility that the other documents in the record, when assessed in light of the letter, support the conclusion that the law firm was aware that the bank adds unwarranted costs to a customer's loan balance. The majority disparages the relevance of these documents because they require inferences from information that was not in the defendants' possession. Referring to the Bates stamp numbers, my colleagues denigrate the significance of these documents because "for the most part, the bank produced these documents." *Ante, at* 831. Although many of the documents were produced by the bank, a number of the documents bear the defendants' Bates stamp marking; at least five documents attached to Mrs. Jenkins' response to the defendants' motion for summary judgement bear the "BHBM" (defendants') Bates stamp and make reference to an insurance claim by the bank for reimbursement of repossession fees or skip claims. One document states explicitly that a "skip claim [was] pending via Garden City Ins[urance]." R.107, Ex.9 at BHBM00096. Another document refers to an insurance skip payment that the bank received and that was credited toward the customer's outstanding balance.

These documents produced from the defendants' own files, coupled with Burris'

opinion letter, would permit a jury to infer that the defendants knew of the additional insurance that was purchased to cover "skip claims." I therefore cannot join in the panel's decision to deprive Mrs. Jenkins of her day in court on the issue of whether the defendants have demonstrated, as a matter of law, that the error was unintentional.

### 2.

Even assuming that the defendants demonstrated as a matter of law that their error was unintentional, to escape liability they also must show that the violation "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k. Here again the defendant debt collectors hardly establish that they are entitled to judgment as a matter of law with respect to this aspect of their defense. They simply have not established a bona fide error defense.

As the majority notes, the defendants have in place a detailed pre-litigation procedure to avoid some types of errors. These procedures are designed to combat problems of transposing numbers and similar problems. But that is not the kind of error at issue here. The alleged violation here is that the defendants brought suit for amounts not authorized by the insurance contract; by including these amounts within the complaint, the defendants violated the Act. On this record, there is no showing that the defendant debt collectors had in place a system designed to catch this sort of error. Thus, the bona fide error defense has not been established as a factual matter.

### 3.

I have, however, a more fundamental disagreement with the majority's view of the bona fide error defense. I cannot agree with its conclusion that the defendants can escape the strictures of the Act because their activities were those of debt collectors, not lawyers. The record makes clear that the defendants were engaged in collecting a debt for their client through the practice of law. It is not disputed that they were using devices that the law only permits lawyers to

use to collect the debt. They had commenced a lawsuit on behalf of their clients. On the letterhead of the law firm, they had sent a letter in an attempt to obtain payment. My colleagues write that "[t]he letter-the centerpiece of Jenkins' claim—has nothing lawyerly about it (except, of course, its letterhead)." *Ante,* at 832. The concession is no mean matter. *See Avila v. Rubin,* 84 F.3d 222, 229 (7th Cir.1996) ("An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up.").

More importantly, the letter itself will not bear the majority's characterization that it is the letter of a debt collector, not a lawyer, and that therefore its writer cannot be held liable for legal errors. The Supreme Court has precluded this conclusion. Justice Breyer's opinion in this case for a unanimous Court held that lawyers were not exempt from the Act. He relied in part on the letter in question: "As part of an *effort to settle the suit,* a lawyer with [defendants'] law firm, George Heintz, wrote to Jenkins' lawyer." *Heintz v. Jenkins,* 514 U.S. 291, 293, 115 S.Ct. 1489, 1489, 131 L.Ed.2d 395 (1995) (emphasis added). Thus, the Court's opinion is premised on the point that this court now negates. Heintz was engaged in "lawyerly" conduct; settling lawsuits is something lawyers do every day.

Further, the letter itself makes clear that this was a settlement overture between two lawyers trying to resolve the suit. The letter was sent on defendants' firm letterhead to Mrs. Jenkins' lawyer. In the letter, Heintz states that the letter is "an attempt to amicably resolve this matter." R.49, App.A at 1. From the context of the letter, however, the phrase "this matter" refers not simply to the underlying debt, as the majority appears to assume, but to the underlying lawsuit. Indeed, just above the attorney/addressee's name, the letter indicates that the communication was sent regarding "Gainer Bank vs.

Darlene Jenkins[,] 89M1–147179." *Id.* Although defendants' ultimate goal may have been to resolve the underlying debt issue, this letter involved a case settlement negotiation between two adversary lawyers. *See Avila,* 84 F.3d at 229 ("A letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which the letter was sent.").

The majority's characterization of the defendants' activities is not a simple misjudgment of the facts of the case. At bottom, the majority misinterprets the bona fide error defense under the FDCPA and seriously undermines the Supreme Court's decision in this case. In the majority's view, even when a lawyer uses those tools reserved exclusively for those who have a license to practice law, the lawyer is liable under the Act only for the same sorts of misfeasance as a nonlawyer. The majority suggests that, if a lawyer/debt collector has breached his duty as a lawyer, Rule 11 sanctions (or the equivalent state law remedy) may be appropriate, but a civil penalty under the FDCPA is not.[*] Only in this way, suggests the majority, are lawyers treated the same as other debt collectors under the Act. Requiring a lawyer to fulfill the duty imposed by Rule 11 (or an equivalent state provision), in the majority's view, holds lawyers to a higher standard than the Act requires.

I cannot agree. Lawyer/debt collectors collect debts in a manner distinctly different from the means available to others. Lawyers can bring lawsuits on behalf of their clients; only lawyers can utilize in this special way the legal machinery of the sovereign. To hold that the FDCPA requires lawyers to meet the duties imposed upon them as attorneys does not discriminate against lawyers. It simply requires that lawyers use responsibly the special weapons that are entrusted to them. My colleagues portray the attorney/debt collector as a Janus-like entity who,

---

[*] The majority rejects Mrs. Jenkins' interpretation of the statute because, says the majority, it would vitiate the bona fide error defense for a lawyer's *attempts* to collect an amount that, as it turns out, is not legally authorized by the contract. I do not see how this naturally follows. Lawyers/debt collectors would have the same protection from the bona fide error defense as anyone else. If the lawyer has in place a set of procedures reasonably adapted to avoid the type of error alleged—attempting to collect legally unauthorized amounts through litigation—the defense is available.

in the course of collecting a single debt for his client, is sometimes attorney engaged in debt collection and sometimes debt collector engaged in debt collection. However, the Supreme Court has made it clear: He is a debt collector who, because of the special tools at his disposal, can violate the Act in especially potent ways.

As the Supreme Court noted, the Congress focused explicitly on lawyers during its consideration of the legislation and determined that they ought to be held liable for sanctions under the Act. Congress' explicit attention to the role that lawyers play in debt collection renders too facile the majority's suggestion that only judicial sanctions can be used to remedy any violations of a lawyer's duty in or out of the courtroom and that the FDCPA provides remedies only for violations that every debt collector can commit. Sanctions are designed to ensure the fair and efficient conduct of litigation in the courts. The purpose of the FDCPA is quite different: It is "to protect consumers from abusive, deceptive, and unfair debt collection practices." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir.1997). To say that judicially-imposed sanctions are sufficient to vindicate Congress' interest in preventing abusive, deceptive or unfair debt practices when that practice is litigation is to undercut the intent of Congress in enacting the legislation and to render lawyers immune from accountability for the very special sort of damage they alone are able to do to the individual consumer and to the economy. The Supreme Court earlier ruled in this case that lawyers are subject to the strictures of the FDCPA. By holding that the sole remedy for attorney abuses in debt collection actions is judicial sanctions, the majority today gives the defendants much of what the Supreme Court and Congress refused to provide: a litigation exception to the FDCPA. According to the majority, no matter how much damage their abusive lawyering works on the sector of the economy protected by the Act, lawyers have no duty under the FDCPA. Although they can bring to bear one of the most powerful tools in debt collection-the ability to engage in litigation to collect debts (something that no other type of debt collector can do)—,

they are immune from the accountability required of everyone else. This view is contrary to the Supreme Court decision in *Jenkins* and to *Avila*, 84 F.3d at 229 (noting that a letter from an attorney with the "attorney's signature implies the attorney has formed a professional judgment about the debtor's case"). In my view, the defendants were required to exercise their professional judgment as attorneys before commencing litigation and sending a letter to Mrs. Jenkins or her attorney on law-firm letterhead.

I respectfully dissent.