**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TRUDY B. AMOND,
<u>Plaintiff-Appellant,</u>

v.

No. 97-2582

BRINCEFIELD, HARTNETT &
ASSOCIATES, P.C.; MICHAEL T.
TOMPKINS,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-97-1274-A)

Argued: December 3, 1998

Decided: March 22, 1999

Before MURNAGHAN and MICHAEL, Circuit Judges, and
HERLONG, United States District Judge for the District of South
Carolina, sitting by desigation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Peter Louis Sissman, Arlington, Virginia, for Appellant.
Danny Mark Howell, SCHRAUB & COMPANY, CHARTERED,
P.L.C., Alexandria, Virginia, for Appellees. **ON BRIEF:** J. Jonathan
Schraub, Paige A. Levy, SCHRAUB & COMPANY, CHARTERED,
P.L.C., Alexandria, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

After state court litigation with a bank over a car loan, Trudy Amond sued the bank's lawyers, Michael T. Tompkins and his firm, Brincefield, Hartnett & Associates, P.C. (Brincefield, Hartnett), in federal court, alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., and state tort law. The district court granted summary judgment for the lawyers. We affirm.

I.

In August 1993 Amond bought a Mazda 626 from a new car dealer and signed a retail installment sales contract to finance her purchase over five years. The dealer then assigned Amond's note to American Investment Bank, N.A. (the Bank). Amond made monthly payments to the Bank until January 1995. After Amond stopped making payments, the Bank repossessed the car. In May 1995 the Bank sold the car on terms that Amond contends were commercially unreasonable and that unfairly reduced the sale price of the car. Because the car's sale price did not cover the outstanding balance on the loan, the Bank asserted a deficiency claim against Amond.

In December 1995 the Bank sued Amond on this deficiency in the Fairfax County General District Court in Virginia. Amond filed a counterclaim against the Bank, alleging violations of the FDCPA. Tompkins and the Brincefield, Hartnett firm represented the Bank in this state court action. After a bench trial in December 1996 the state court awarded judgment to Amond on the Bank's claim for the deficiency because the Bank was unable to rebut Amond's assertion that the Bank had sold her car as a less expensive model. The state court found for the Bank on Amond's FDCPA counterclaim, dismissing it with prejudice. The Bank filed a timely appeal of the judgment denying its deficiency claim. Under Virginia law this appeal served to

2

annul completely the trial court judgment against the Bank. See Addison v. Salyer, 40 S.E.2d 260, 263 (Va. 1946). Amond attempted to appeal the dismissal of her FDCPA claim against the Bank, but her appeal was untimely. Later, the Bank took a voluntary nonsuit on its claim against Amond.

In early 1997 Amond wanted to buy a condominium in Virginia Beach, Virginia, and sought a mortgage loan to finance the purchase. She found a willing lender, but the lender conditioned approval of the loan on Amond's resolving a matter on her credit report, that is, the Bank's asserted claim of $11,777 on the old car loan. Amond disputed the Bank's claim and contacted the Bank, demanding that it reinvestigate the matter and delete the debt from her credit record. Tompkins responded on behalf of his client, the Bank, confirming that the stated balance on the loan was accurate. Because of this outstanding item on her credit report, Amond was unable to obtain the loan to buy the condominium.

Amond then sued Tompkins and the Brincefield, Hartnett firm in federal court. She claimed that the lawyers violated the FDCPA by attempting to collect a debt that was not owed and by verifying an $11,777 balance on the loan that was in error. She also asserted state law claims for defamation and intentional interference with economic, business, and contract expectancy. The district court granted summary judgment for the defendants, and Amond now appeals.

II.

We review the district court's grant of summary judgment de novo. If the papers filed in district court show there is no "genuine issue as to any material fact," summary judgment is proper. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-51 (1986).

Amond's claim against Tompkins and Brincefield, Hartnett essentially rests on two points. She first contends that the lawyers knew the debt was uncollectible because a state court had already ruled for her on the Bank's action to collect the deficiency. She then asserts that even if she is liable for a deficiency on the car loan, the outstanding

3

balance verified by the Bank and confirmed to her by the lawyers was overstated.

Amond's first argument is entirely without merit. As a matter of Virginia law the Bank's appeal of the state court judgment completely nullified the judgment. See Thomas Gemmell, Inc. v. Svea Fire & Life Ins. Co., 184 S.E. 457, 458 (Va. 1936) (holding that the effect of such an appeal "is not only to suspend but to destroy the effect of [the] judgment . . . . It makes it as though no judgment had been rendered. The cause is considered still pending, no regard is had to the judgment . . . and the rights of the parties are the same as they would be in any other suit pending in the courts of record."). Therefore, no legal obstacle prevented the Bank from continuing to press its claim for the deficiency. In the federal action Amond continued to assert that the loan deficiency was the result of the Bank's selling the car in a commercially unreasonable manner. The district court held that this allegation was irrelevant to Amond's claim against the lawyers. It noted that this charge concerned events that took place before the lawyers became involved in the case, that the lawyers had no duty to investigate the facts surrounding the sale of the car, and that the lawyers had evidence that rebutted Amond's charges. We agree with the district court that Amond has failed to present a genuine issue of material fact on this question.

Amond's second argument also fails. She contends that the lawyers, in representing the Bank, overstated the amount of the deficiency. The district court concluded that the lawyers had no reason to question the amount of the debt they were attempting to collect for their client. The court said that the lawyers "cannot be held liable for what appears to be an honest dispute regarding the amount of the debt, so long as there exists a colorable factual basis for the higher amount claimed by their client." It noted that the high interest rate on the car loan and attorneys' fees could account for the substantial increase in Amond's outstanding balance.* Given these factors, the court concluded that the increase in the size of the debt "is not sufficiently surprising to put defendants on notice that their client -- the lender -- may be falsely representing the amount of the debt owed

_____

*The deficiency amount rose from approximately $6,800 in December 1995 to $12,000 in April 1997.

4

by plaintiff." The record reveals no other evidence suggesting that Tompkins and Brincefield, Hartnett attempted to collect a debt they knew to be overstated or legally discharged. We therefore find no error in the district court's conclusions on this point.

Amond further contends that even if the lawyers did not intentionally attempt to collect an overstated debt, they were not entitled to rely blindly on the Bank's statement of the amount. She argues that lawyers who act as debt collectors have a heightened duty to investigate the validity and amount of the debts they seek to collect. Such duty, she contends, derives from both the FDCPA and a lawyer's duties under Rule 11 of the Federal Rules of Civil Procedure. Under Rule 11 lawyers filing papers with a court must certify that those papers are well grounded in fact, legally tenable, and not presented for an improper purpose. See Fed. R. Civ. P. 11; Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). This certification must be based on a reasonable inquiry by the lawyers. Id . Amond claims that the Rule 11 duty of reasonable inquiry should extend to any activity by a lawyer that constitutes debt collection under the FDCPA, thereby diminishing the ability of lawyer-debt collectors to rely on the representations of their clients.

Lawyers who regularly engage in consumer debt collection activity are subject to the limitations of the FDCPA, even where their conduct involves litigation. See Heintz v. Jenkins, 514 U.S. 291, 299 (1995). However, they are not subject to any special, higher duty under the FDCPA solely by virtue of their status as lawyers. As the Seventh Circuit has explained:

> The Act reads that debt collectors are not liable for attempting to collect validly certified amounts owed their client. It does not say that the collector's status as an attorney should add a requirement of independent legal analysis for each aspect of the creditor's claim . . . . To interpret the FDCPA as not to treat lawyers and debt collectors equally would contort the statute's meaning, and ignore Congress' drafting and the Supreme Court's interpretation.

Jenkins v. Heintz, 124 F.3d 824, 833-34 (7th Cir. 1997).

5

The Seventh Circuit further explained:

> While a letter sent by an attorney after a lawsuit is filed arguably presupposes that the attorney-collector has put on a new hat and is now a litigator, not a collector, the Act still defines him as a collector, and the Supreme Court has confined the litigator to the standards of a collector. Filing a lawsuit does not insulate a lawyer from the restrictions of the Act, nor does it expose him to standards under the Act not applied to non-lawyer collectors.

Id. at 833.

Of course, Rule 11 (and equivalent state law sanction provisions) applies to lawyers when they act in their capacity as litigators (as opposed to debt collectors). Conduct by lawyers that violates the established norms of Rule 11 remains subject to sanction. However, we will not combine Rule 11 with the FDCPA to create a heightened duty of investigation for lawyer-debt collectors engaging in ordinary debt collection activity.

We conclude that the district court properly rejected Amond's second argument on the ground that the lawyers had a "colorable factual basis" for the deficiency claim asserted against Amond.

III.

Amond asserts in her appeal brief that she was denied sufficient additional time for discovery in district court. We recognize that summary judgment is only appropriate after the opposing party has had adequate time for discovery. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, Amond did not request any additional discovery on a disputed question of material fact before the entry of summary judgment.

One day before the district court rendered judgment, Amond's lawyer filed a declaration seeking additional discovery as to whether Tompkins knew that Amond was applying for a mortgage loan. That same day Tompkins responded that he knew about Amond's loan

6

applications, thereby conceding the fact that Tompkins had sought discovery on. The district court therefore had no reason to delay the entry of summary judgment. Only after the entry of judgment did Amond file another declaration requesting more discovery. This declaration was, of course, untimely. We have previously noted that "[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirements of Rule 56(f) to set out reasons for the need for discovery in an affidavit." Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 215 (4th Cir. 1993) (quoting Sweats Fashions Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1567 (Fed. Cir. 1987)). We therefore conclude that Amond's discovery claim is without merit.

The judgment of the district court is

AFFIRMED.