Percy **WATKINS**, et al., Plaintiff,

v.

**PETERSON ENTERPRISES, INC. d/b/a Valley Empire Collection, Defendant.**

**No. CS–96–602–FVS.**

United States District Court, E.D. Washington.

*July 6, 1999.*

Michael David Kinkley, Law Office of Michael D. Kinkley, Spokane, WA, Timothy W. Durkop, Durkop Law Firm, Spokane, WA, for plaintiffs.

Michael Joseph Beyer, Spokane, WA, for defendants.

## ORDER GRANTING SUMMARY JUDGMENT

VAN SICKLE, District Judge.

**THIS MATTER** came before the Court based upon cross motions for summary judgment. The plaintiffs were represented by Timothy W. Durkop and Michael D. Kinkley; the defendant by Michael J. Beyer.

## BACKGROUND

Diane Bohnet and Percy Watkins allege Peterson Enterprises, Inc. violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692o, the Washington Collection Agency Act, RCW 19.16.100–.950, and the Washington Consumer Protection Act, RCW 19.86.010–.920. The Court has jurisdiction over the FDCPA claim pursuant to 15 U.S.C. § 1692k(d). The Court may exercise supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

*Diane Bohnet*

On June 18, 1990, Peterson secured a default judgment against Bohnet in the amount of $537.48. Thereafter, Peterson applied for, and received, six writs of garnishment. The writs are labeled "A" through "F."

Writ "A" was obtained on July 1, 1990, and served upon U.S. Bank. Writ "A" was dismissed on September 26, 1990, without payment of funds.

Writs "B" through "E" were served upon Red Lion Inn ("Red Lion"), Ms. Bohnet's employer. Writ "B" was obtained on October 3, 1990. It included costs associated with Writ "A." Red Lion answered Writ "B." However, instead of securing a judgment against Red Lion, Peterson obtained an order from a state judge directing Red Lion to pay the sum of $80.47 to the court. The parties refer to such orders as "pay orders." As it turned out, Red Lion paid nothing in response to Writ "B."

Writ "C" was obtained on May 12, 1992. The parties' statements of material fact do no indicate whether Writ "C" included costs associated with Writs "A" and "B." Writ "C" was dismissed on July 14, 1992, based upon Ms. Bohnet's agreement to make payments on an installment plan.

Writ "D" was obtained on April 26, 1994. The parties' statements of material fact do not indicate whether Writ "D" included costs associated with Writs "A," "B," or "C." Red Lion advised Peterson that Ms. Bohnet was on medical leave. Peterson took no further action with respect to Writ "D."

Writ "E" was obtained on July 24, 1995. The parties' statements of material fact do not indicate whether Writ "E" included costs associated with Writs "A," "B," "C," or "D." Red Lion answered Writ "E." Its uncontroverted answers indicated it held no funds subject to garnishment. Peterson took no further action with respect to Writ "E."

Writ "F" was obtained on February 13, 1996, and served upon First Interstate Bank. The parties acknowledge that Writ "F" included costs associated with previous writs. (Agreed Pretrial Order at 12.) First Interstate answered Writ "F." Ms. Bohnet filed an "Exemption Claim" alleging the funds in the bank account were child support payments. On May 31, 1996, Writ "F" was dismissed pursuant to an agreed order.

*Percy Watkins*

On April 11, 1996, Peterson obtained a default judgment against Percy Watkins in the amount of $386.02. Thereafter, Peterson applied for, and received, three writs of garnishment. The writs are labeled "A" through "C."

Writ "A" was obtained on April 29, 1996, and served upon New Hope Church ("New Hope"), which did not respond. Peterson decided not to obtain a default judgment against New Hope.

Writ "B" was obtained on September 17, 1996, and served upon Telco Credit Union ("Telco"). Writ "B" included costs and fees associated with Writ "A." Telco filed an answer. Peterson did not obtain a judgment against Telco. Instead, it secured a pay order on October 18, 1996. In response, Telco sent a check in the amount of $237.96.

Writ "C" was obtained on October 8, 1996, and served on Telco. Writ "C" included costs and fees associated with Writs "A" and "B." Telco filed an answer. Peterson did not secure a judgment. Instead, it obtained a pay order on November 16, 1996. In response, Telco sent a check in the amount of $420.18. A satisfaction of judgment was entered thereafter.

## FAIR DEBT COLLECTION PRACTICES ACT

■ The FDCPA prohibits debt collectors from falsely representing the amount of any debt, 15 U.S.C. § 1692e(2), from collecting any amount not permitted by law, 15 U.S.C. § 1692f(1), and from harassing debtors, 15 U.S.C. § 1692d. After *Watkins v. Peterson Enterprises, Inc.*, 137 Wash.2d 632, 648–49, 973 P.2d 1037 (1999), it is clear creditors are not permitted to recover costs and fees associated with "unsuccessful" writs of garnishment. Nor are creditors permitted to use "pay orders" to obtain money from garnishee defendants. *Id.* at 647, 973 P.2d 1037.[1] As a result, the plaintiffs move for summary judgment on the following issues: (1) Whether Peterson misrepresented the amounts they owed in violation of § 1692e by serving writs of garnishment that included costs and fees associated with prior unsuccessful writs; (2) whether Peterson attempted to collect amounts to which it was not entitled in violation of § 1692f by serving writs of garnishment that included costs and fees associated with prior unsuccessful writs; (3) whether Peterson employed unfair means to collect debts in violation of § 1692f by using pay orders instead of obtaining judgments against garnishee defendants; (4) whether Peterson harassed them in violation of § 1692d by serving multiple unsuccessful writs of garnishment; and (5) whether Peterson harassed them in violation of § 1692d by effectively freezing sums of money in excess of the amounts they owed.

### A. Statute of Limitations

■ FDCPA claims are subject to a one-year statute of limitations. 15 U.S.C. 1692k(d). The limitations period runs from the date of the offending act. *See Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir.1997). Since the plaintiffs filed suit on November 1, 1996, the only acts for which Peterson may be held liable under the FDCPA are those that occurred after November 1, 1995. The one-year limitations period has no impact on Mr. Watkins' claims, but it does have an impact on Ms. Bohnet's. Of the six writs served by Peterson, only Writ "F" was served after November 1, 1995. Thus, Ms. Bohnet's FDCPA claim is limited to Writ "F."

### B. Bona Fide Error Defense

The FDCPA provides, "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any

---

1. At oral argument, Peterson asserted that *Watkins* is a new rule of law, and that a serious question exists with respect to whether it may be applied to the parties in this case. Peterson is incorrect. "[W]here a statute has been construed by the highest court of the state, the court's construction is deemed to be what the statute has meant since its enactment." *State v. Moen*, 129 Wash.2d 535, 538, 919 P.2d 69 (1996).

such error." 15 U.S.C. § 1692k(c). In an effort to invoke the bona fide error defense, Peterson has submitted an affidavit stating not only that its collection practices were based upon the advice of counsel, but that they were accepted by courts throughout the state.

The plaintiffs maintain Peterson may not rely upon § 1692k(c). As a threshold matter, they note Peterson neither pleaded the defense in its answer nor referred to § 1692k(c) in the pretrial order. Moreover, according to the plaintiffs, even if Peterson has not waived the defense, § 1692k(c) does not apply to the types of violations Peterson committed.

### 1. Waiver

■ The bona fide error defense is an affirmative defense. *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1514 (9th Cir.1994). Ordinarily, a defendant waives the defense by failing to include it in a pretrial order. *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.,* 841 F.2d 918, 924 (9th Cir.1988). However, a pretrial order may be modified to prevent manifest injustice. Fed.R.Civ.P. 16(e). Four factors are relevant: (1) the degree of prejudice to the moving party if the pretrial order is not modified; (2) the degree of prejudice to the nonmoving party if the order is modified; (3) the impact of modification on the orderly and efficient conduct of the case; and (4) any degree of willfulness, bad faith, or inexcusable neglect on the moving party. *United States v. First Nat'l Bank of Circle,* 652 F.2d 882, 887 (9th Cir.1981). *See also Byrd v. Guess,* 137 F.3d 1126, 1132 (9th Cir.1998). Here, several events have occurred since the pretrial order was entered. For one thing, the trial was stricken and a question of state law was certified to the Washington Supreme Court. Its decision has had a profound impact on this case. For another, the plaintiffs have been allowed to move for summary judgment although the dispositive motion deadline has passed. Given those circumstances, it would be un-

just to refuse Peterson permission to raise the bona fide error defense.

### 2. Use of Pay Orders

■ Peterson's effort to invoke § 1692k(c) faces a significant obstacle. As the plaintiffs point out, "[r]eliance on advice of counsel or a mistake about the law is insufficient *by itself* to raise the bona fide error defense. '[Section] 1692k(c) does not immunize mistakes of law, even if properly proven.'" *Baker v. G.C. Services Corp.,* 677 F.2d 775, 779 (9th Cir.1982) (emphasis added). Indeed, in *Baker,* the Court of Appeals rejected a debt collector's attempt to raise a bona fide error defense, saying, "Appellant only presented evidence that, at best, might show it had been mistaken about the law. This is insufficient *by itself* to support the bona fide error defense pursuant to 15 U.S.C. § 1692k(c)." *Id.* (emphasis added).

Peterson submits the plaintiffs are wrong in asserting that a mistake of law can never constitute a bona fide error. According to Peterson, the fact the *Baker* decision twice employs the phrase "by itself" is significant. To Peterson's way of thinking, the circuit court's repeated use of that phrase implies there are circumstances in which a mistake of law can constitute a bona fide error. This is such a case, Peterson insists. State district courts, not debt collectors, instituted the use of pay orders.

■ Peterson has a point. In *Baker,* the issue was whether a debt collector could rely upon the mistaken advice of its attorneys. The Ninth Circuit said, "No." 677 F.2d at 779. However, there was no indication the debt collector's practices had ever been approved by federal or state officials. Here, by contrast, Peterson has presented unrebutted evidence it used pay orders because it was required to do so by state district courts. This, then, is not a situation in which an unlawful practice occurred solely as a result of a debt collector's mistaken view of the law. To the contrary, the mistake stemmed from an

official interpretation of RCW Chapter 6.27. As a result, *Baker* is not controlling. Peterson's use of pay orders was a bona fide error under the FDCPA.[2]

### 3. Fees Associated With Unsuccessful Writs

 The same cannot be said of Peterson's attempts to collect fees associated with unsuccessful writs. No state court required Peterson to seek such fees. Nor did any state court ever rule that Peterson was entitled to such fees. Rather, Peterson made a calculated, but mistaken, decision to seek them. Since Peterson's decision to do so was a mistake of its own making, Peterson's error was not bona fide.

### C. Ms. Bohnet Is Entitled to Partial Summary Judgment on Liability

Ms. Bohnet is entitled to summary judgment on some, but not all, of her theories of liability. Peterson is liable for violations of §§ 1692e and 1692f, but not 1692d.

 Writ "F" included costs and fees associated with prior unsuccessful writs of garnishment. Since Peterson was not permitted to recover those sums under Washington law, Writ "F" falsely represented Ms. Bohnet's debt in violation of § 1692e. For the same reason, Peterson's decision to serve Writ "F" upon First International was an unfair collection practice in violation of § 1692f. The fact Peterson may have been operating under a good-faith misinterpretation of Washington law is not a defense.

The remainder of Ms. Bohnet's FDCPA theories are predicated upon facts that occurred prior to November 1, 1995. As a result, such theories of liability are time-barred.

### D. Mr. Watkins Is Entitled to Partial Summary Judgment on Liability

Like Ms. Bohnet, Mr. Watkins is entitled to summary judgment on some, but not all, of his theories of liability. Peterson is liable for violations of §§ 1692e and 1692f, but not 1692d.

Writs "B" and "C" included costs and fees associated with prior unsuccessful writs of garnishment. Since Peterson was not permitted to recover those sums under Washington law, Writs "B" and "C" falsely represented Mr. Watkins' debt in violation of § 1692e. For the same reason, Peterson's decision to serve Writs "B" and "C" upon Telco was an unfair collection practice in violation of § 1692f.[3]

 Mr. Watkins' remaining theories of liability are based upon § 1692d, which forbids "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, ...." According to Watkins, the practice of serving multiple writs of garnishment constitutes a form of harassment. In addition, Watkins complains Peterson's decision to continue serving writs upon Telco was abusive in that it effectively "froze" all of the funds in his account. Mr. Watkins' harassment theories are without merit. Initially, it is worth noting the practice of serving multiple writs does not appear to violate Washington law. Neither the statute authorizing application for writs, RCW 6.27.060, nor the statute authorizing issuance of writs, RCW 6.27.070, limits the number of writs a judgment creditor may apply for or obtain. To the contrary, Washington law

---

**2.** Peterson argues the pay orders are entitled to preclusive effect in this action. While it is true that "[f]ederal courts must give state court judgments the same preclusive effect as they would be given by courts of that state[,]" *Dodd v. Hood River County,* 136 F.3d 1219, 1224 (9th Cir.1998), it is questionable whether the Washington Supreme Court would give preclusive effect to the pay orders. For one thing, they are not judgments. For another, they are not permitted under Washington law.

**3.** As explained above, Peterson's use of pay orders was a bona fide error for which it may not be held liable under the FDCPA. *See supra* p. 8.

seems to recognize that multiple writs may be necessary to collect a judgment. 1A Marjorie Dick Rombauer, Wash.Prac., *Methods of Practice* § 50.24, at 378 (Kelly Kunsch ed., 4th ed.1999). Furthermore, it does not appear Peterson's conduct is the type of conduct Congress had in mind when it enacted § 1692d. That section gives six examples of harassment.[4] Although the list is not exclusive, the types of behavior it describes are a far cry from that at issue in this circumstance. While there may be instances in which a debt collector's repeated service of writs rises to the level of harassment, this is not such a case.

### E. FDCPA Damages

Since Peterson collected nothing from Ms. Bohnet after November 1, 1995, she suffered no actual damages. Nevertheless, she is entitled to statutory damages of up to one thousand ($1000.00) dollars. 15 U.S.C. § 1692k(a)(2)(A). In determining an appropriate penalty, the Court has considered "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b). Given the circumstances, the Court awards Ms. Bohnet the sum of one thousand ($1000.00) dollars in statutory damages.

Peterson collected a total of $658.14 from Mr. Watkins during the Fall of 1996. Since Peterson concedes Writs "B" and "C" included fees and costs to which it was not entitled, Watkins has suffered actual damages. Peterson will be required to disgorge all unauthorized fees and costs. In addition, the Court awards Mr. Watkins the sum of one thousand ($1000.00) dollars in statutory damages.

### STATE CLAIMS

The Washington Consumer Protection Act (WCPA) makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." RCW 19.86.020 (1999). At a minimum, a WCPA claim requires proof of either "a per se violation of a statute[,] or [an] unfair or deceptive practice[ ] unregulated by statute but involving the public interest." *Evergreen Collectors v. Holt*, 60 Wash.App. 151, 154, 803 P.2d 10 (1991) (internal punctuation and citation omitted). The Agreed Pretrial Order does not set forth the precise theory upon which the plaintiffs' WCPA claim is based. It was not until they moved for summary judgment that the contours of their claim began to emerge. Although the plaintiffs mention the various methods by which a WCPA claim may be established, they focus their efforts on proving a "per se" violation. In essence, they argue Peterson violated Washington's Collection Agency Act (WCAA), which prohibits a number of collection practices. RCW 19.16.250.

The plaintiffs allege violations of subsections (14), (15), and (18). Subsection (14) makes it unlawful for a collection agency to "represent . . . that the existing obligation . . . has been increased by the addition of attorney fees, investigation fees, service fees, or any other fees or charges when in fact such fees or charges may not be legal-

---

4. The six include:
 (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
 (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
 (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

 (4) The advertisement for sale of any debt to coerce payment of the debt.
 (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
 (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.
 15 U.S.C. § 1692d(1)–(6).

ly added to the existing obligation of such debtor." RCW 19.16.250(14). Subsection (15) makes it unlawful for a collection agency to "[t]hreaten to take any action against the debtor which the [agency] cannot legally take at the time the threat is made." RCW 19.16.250(15). Finally, subsection (18) makes it unlawful for a collection agency to "[c]ollect or attempt to collect in addition to the principal amount of a claim any sum other than allowable interest, collection costs or handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable court costs." RCW 19.16.250(18).

■ A violation of RCW 19.16.250 is a per se unfair trade practice. RCW 19.16.440.[5] Thus, if the plaintiffs can prove a violation of RCW 19.16.250, they will have established a per se violation of the WCPA. *Evergreen Collectors*, 60 Wash. App. at 155, 803 P.2d 10.[6]

Peterson opposed summary judgment on the ground a debt collector cannot be held liable under the WCPA for acts "performed in good faith under an arguable interpretation of existing law...." *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wash.2d 133, 155, 930 P.2d 288 (1997) (citing *Perry v. Island Sav. & Loan Ass'n*, 101 Wash.2d 795, 810, 684 P.2d 1281 (1984)). Such acts, Peterson said, "do not constitute unfair conduct violative of the consumer protection law." *Id.*

The plaintiffs did not address Peterson's contention in their reply. At oral argument, however, they urged the Court to reject the proposed defense. First, they submitted it is limited to WCPA cases involving insurance claims. Second, they submitted the WCPA does not require proof of intent to deceive and, therefore, a debt collector's good faith is irrelevant. As authority for the second proposition, they cited *Short v. Demopolis*, 103 Wash.2d 52, 61, 691 P.2d 163 (1984), and *Fisher v. World–Wide Trophy Outfitters*, 15 Wash.App. 742, 551 P.2d 1398 (1976).

■ The plaintiffs' first argument— *i.e.*, that the good-faith defense is limited to insurance cases—is incorrect. The Washington Court of Appeals has considered the good-faith defense in non-insurance contexts. *Cox v. Lewiston Grain Growers, Inc.*, 86 Wash.App. 357, 374, 936 P.2d 1191, *review denied*, 133 Wash.2d 1020, 948 P.2d 387 (1997). Although the *Cox* court ultimately rejected the defense, it did so because the defendant failed to establish a factual basis for it. *Id.*

■ The plaintiff's second argument— *i.e.*, that good faith is irrelevant—is, at best, partially correct. To begin with, the plaintiffs' reliance upon *Short* is misplaced. The majority opinion does not discuss the question of intent. The language upon which the plaintiffs are relying is found in Justice Pearson's concurring opinion. 103 Wash.2d at 70, 691 P.2d 163. Nevertheless, in fairness to the plaintiffs, *Fisher* does stand for the proposition for it was cited. There, the Washington Court of Appeals said, "An 'unfair' or deceptive

5. RCW 19.16.440 states:

The operation of a collection agency or out-of-state collection agency without a license as prohibited by RCW 19.16.110 and the commission by a licensee or an employee of a licensee of an act or practice prohibited by RCW 19.16.250 are declared to be unfair acts or practices or unfair methods of competition in the conduct of trade or commerce for the purpose of the application of the Consumer Protection Act found in chapter 19.86 RCW.

6. The plaintiffs' WCAA claim is significant for another reason. FDCPA claims are subject to a one-year statute of limitations. *See supra* p. 1106–07. In all probability, WCAA claims are subject to a three-year statute of limitations. *See Seattle Prof'l Eng'g Employees Ass'n v. Boeing*, 92 Wash.App. 214, 228, 963 P.2d 204 (1998) (when a state statute creates a right, and the invasion of the right constitutes an injury to the person, a claim brought under the statute is subject to the three-year limitations period set forth in RCW 4.16.080(2)); *Lewis v. Lockheed Shipbuilding & Constr. Co.*, 36 Wash.App. 607, 613, 676 P.2d 545 (1984) (same). As a result, under the WCAA, Peterson may be held liable for acts that are time-barred under the FDCPA.

practice' does not require a finding of an intent to deceive or defraud and therefore good faith on the part of the seller is immaterial." 15 Wash.App. at 748, 551 P.2d 1398. By failing to distinguish between unfair and deceptive acts, *Fisher* implies that good faith is irrelevant in either case. Since then, however, the Washington Supreme Court has explained that the terms "unfair" and "deceptive" are separate concepts. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 785–86, 719 P.2d 531 (1986). *See also Saunders v. Lloyd's of London*, 113 Wash.2d 330, 344, 779 P.2d 249 (1989). While Peterson's good faith may not be a defense to a claim that it engaged in deceptive practices, Peterson's good faith is a defense to a claim that its practices were per se unfair. *See, e.g., Leingang*, 131 Wash.2d at 155, 930 P.2d 288; *Perry*, 101 Wash.2d at 810, 684 P.2d 1281.

The day following oral argument, counsel for the plaintiffs filed a memorandum in response to Peterson's motion for summary judgment. According to the plaintiffs, RCW 19.16.440 makes Peterson's conduct both unfair and deceptive as a matter of law. The plaintiffs are incorrect in that regard. RCW 19.16.440 says nothing about deception. Rather, it says the acts prohibited by RCW 19.16.250 are "unfair acts or practices or unfair methods of competition." As *Perry* and *Leingang* indicate, an unfair practice that occurs "in good faith under an arguable interpretation of existing law" is not actionable under the WCPA. Thus, Peterson may assert a good-faith defense with respect to the plaintiffs' allegation that it committed per se unfair acts or practices.

 To establish the good-faith defense, Peterson must show its practices were based upon "an arguable interpretation of existing law." There are three reasons why Peterson's interpretation of RCW Chapter 6.27 was arguable even if incorrect. First, it was not flatly inconsistent with the text of the statute. Second,

there were no Washington appellate decisions pointing toward *Watkins v. Peterson Enterprises, Inc.* Finally, state district courts instituted the use of pay orders and routinely approved the fees requested by Peterson. Since Peterson acted in good faith, it may not be held liable under Washington's Consumer Protection Act for allegedly unfair acts or practices.

## PROCEDURAL DUE PROCESS

Peterson argues the Washington Supreme Court's interpretation of RCW Chapter 6.27 denies a garnishee defendant procedural due process. According to Peterson, the notice the garnishee defendant receives under RCW 6.27.100 does not inform it that a creditor must obtain a judgment against a garnishee defendant in order to recover the money the garnishee defendant is holding pursuant to the writ of garnishment. At oral argument, the plaintiffs challenged Peterson's standing to raise this issue.

 The jurisdiction of a federal court is limited to actual cases and controversies. U.S. Const. art. III, § 2, cl. 1. That limitation is given effect by requiring a litigant to establish standing before invoking the court's authority. *See Allen v. Wright*, 468 U.S. 737, 750–51, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). At its "irreducible constitutional minimum," standing requires proof of three things. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations omitted). "First, the plaintiff must have suffered an 'injury in fact'...." *Id.* (citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.' " *Id.* at 560–61, 112 S.Ct. at 2136 (quoting *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976)) (internal punctuation omitted). "Third, it must

be likely, as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Id.* at 561, 112 S.Ct. at 2136 (quoting *Simon,* 426 U.S. at 38, 43, 96 S.Ct. at 1924, 1926).

 Since Peterson is not a garnishee defendant, Peterson cannot satisfy the first requirement—injury in fact. Thus, Peterson lacks standing to challenge RCW Chapter 6.27 on behalf of garnishee defendants.

**IT IS HEREBY ORDERED:**

1. The motion for summary judgment filed by plaintiffs Bohnet and Watkins (Ct. Rec.43) is granted in part and denied in part:

(a) Diane Bohnet is entitled to statutory damages in the amount of one thousand ($1000.00) dollars.

(b) Percy Watkins is entitled to statutory damages in the amount of one thousand ($1000.00) dollars.

(c) Peterson must disgorge any fees and costs it collected from Mr. Watkins that were associated with unsuccessful writs of garnishment.

2. The motion for summary judgement filed by defendant Peterson (Ct.Rec.61) is granted in part and denied in part.

3. Defendant Peterson's motion to strike the plaintiffs' reply brief (Ct.Rec.63) and Peterson's motion to strike the Bohnet declaration (Ct.Rec.65) are denied.