**Kevin FRYE and Mila Frye, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**BOWMAN, HEINTZ, BOSCIA AND VICIAN, P.C., Defendant.**

**No. IP 99–1455–C–T.**

United States District Court, S.D. Indiana, Indianapolis Division.

Jan. 28, 2002.

---

Clifford W. Shepard, Consumer Protection Law Office, Indianapolis, IN, for Plaintiffs.

G. Ronald Heath, Johnson Smith Heath LLP, Indianapolis, IN, Glenn S. Vician, Bowman, Heintz, Boscia & Vician, Merrillville, IN, for Defendant.

## ENTRY ADDRESSING LEGAL ISSUES ON SUMMARY JUDGMENT

TINDER, District Judge.

This Entry addresses the legal issues raised in the parties' cross-motions for summary judgment which motions were consolidated on September 19, 2001. The issues revolve around whether the Defendant's Summonses issued to Plaintiffs under state court procedural rules violate the Fair Debt Collections Practices Act (the "FDCPA" or "Act"), 15 U.S.C. §§ 1691–1692o.

## I. A Summons

The Fryes' claims under the FDCPA challenge Bowman's Summonses issued to them in state court litigation. The purpose of a summons is to notify a party that an action has been brought against it and to bring that party under the court's jurisdiction. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999) ("An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."); *see also Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 444–445, 66 S.Ct. 242, 90 L.Ed. 185 (1946) (stating that "service of summons is the procedure by which a court ... asserts jurisdiction over the person of the party served"). "Service of process ... is fundamental to any procedural imposition on a named defendant.... In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros.*, 526 U.S. at 350, 119 S.Ct. 1322. Thus, "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* A summons serves the same purposes under Indiana's procedural rules. Ind. T.R. 4(A) ("The court acquires jurisdiction over a party or person who under these rules commences or joins in the action, is served with summons or enters an appearance, or who is subjected to the power of the court under any other law."); *State ex rel. Travelers Ins. Co. v. Madison Superior Court*, 265 Ind. 287, 354 N.E.2d 188, 191 (1976) ("One becomes a party to an action when he ... is served with summons ... or ... is subjected to the power of the court under any other law.").

## II. Summary Judgment Standard

Summary judgment should be granted only where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). No genuine issue exists if the record viewed as a whole could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "With cross-motions, [the] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir.2001). With regard to an affirmative defense on which the defendant bears the burden, the defendant must present evidence to "support each element of its defense[ ] and demonstrate the lack of any genuine issue of material fact with regard thereto." *Rushing v. Kan. City So. Ry. Co.*, 185 F.3d 496, 505 (5th Cir.1999).

## III. Background[1]

On September 16, 1999, Plaintiffs Kevin Frye and Mila Frye commenced this action on behalf of themselves and all others similarly situated, alleging that Defendant Bowman, Heintz, Boscia and Vician, P.C. ("Bowman") violated the FDCPA. The Fryes are consumers who resided in Madison County, Anderson, Indiana, during the alleged violations of the FDCPA contained

---

1. These facts are not disputed. Additional facts may be set forth in the Discussion section as necessary. That section also will address various disputes about factual submissions proffered by the Fryes.

in the Complaint. Their debt with General Electric Capital Corporation ("GE") was primarily for personal, family or household purposes. Bowman is a law firm in the State of Indiana which is, *inter alia,* engaged in the business of collecting consumer debt in the state.[2]

On or before September 17, 1998, GE hired Bowman to collect the debt owed GE by the Fryes. On September 17, while acting within the scope of its employment for GE, Bowman sued the Fryes in the Madison County Superior Court, Madison County, Indiana, and caused Summonses to be sent to them. Copies of the Summonses to the Fryes are attached to Plaintiffs' Designation Of Evidence as Exhibits G and H. Bowman designed and compiled the Summonses and then furnished them to the Clerk of the Madison County Superior Court. Bowman's purpose in filing the Complaint served with the Summonses was to collect from the Fryes the debt owed GE.

The Complaint and Summonses state, *inter alia,* that "[T]his is an attempt to collect a debt...." The Summonses further state in relevant part:

**THE STATE OF INDIANA TO THE DEFENDANT:**

You have been sued by the person(s) identified as "Plaintiff" in the Court stated above.

The nature of the suit against you is stated in the COMPLAINT which is attached to this SUMMONS. It also states the demand which the Plaintiff has made against you.

You must either personally or by your attorney file your written answer to the COMPLAINT within twenty (20) days commencing the day after this SUM-MONS and the COMPLAINT were personally served upon you or your agent or left for you by the Sheriff or other process server.

In the event the SUMMONS and COMPLAINT were left for you and you then receive by first class mail (not certified) a copy of the SUMMONS alone, this mailing is merely a confirmation that the SUMMONS and COMPLAINT were previously left for you. You should not consider the date on which you receive the mailed SUMMONS as the commencement date for the time period allowed for your answer. Rather, the time period allowed for your written answer commences on the date when the SUMMONS and COMPLAINT were first personally served upon you or your agent or left for you by the Sheriff or other process server.

However, if you or your agent first received the SUMMONS and the COMPLAINT by certified mail, you have twenty-three (23) days from the date of receipt to file your written answer with the Clerk.

If you fail to answer the COMPLAINT of the Plaintiff within the times prescribed herein, judgment will be entered against you for what the Plaintiff has demanded.

If you have a claim against the Plaintiff arising from the same transaction or occurrence, you may be required to assert such claim in writing together with your written answer.

In *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), Bowman's predecessor law firm filed an affidavit describing certain systems and proce-

---

**2.** The matter and amount of the debt are of no consequence to the court's ruling. The Fryes' FDCPA action is based on the form of the communication regarding that debt from Bowman rather than the Fryes' liability under or amount of the debt. Thus, though the Fryes refer to the debt as the debt allegedly owed GE, the court refers to it simply as the debt.

dures in place in the firm which were adopted to avoid errors under the FDCPA. Those systems and procedures are in full force and effect at the Bowman firm. The procedures include: (1) publication of an "in-house" Fair Debt compliance manual, updated on a regular basis and supplied to every attorney, paralegal, collector and employee of the firm who deals with the direct collection of consumer loan accounts; and (2) provision of in-house training seminars to specifically inform paralegals, collectors, and other staff persons working on the collection of consumer debt accounts as to information to ensure compliance with the FDCPA and advise of any changes under the FDCPA as they occur. More specifically as to the alleged FDCPA violation in the instant case, Bowman has a pre-suit review procedure to provide checks and balances to review the types of summons forms used by the firm in consumer collection cases, including the case filed against the Fryes in state court. That process is used to ensure accuracy and to repeatedly review the work of staff persons, paralegals and attorneys to avoid errors and omissions that could result in a violation of the FDCPA. The process includes these steps: (1) an attorney, paralegal or staff person can select a summons form from the firm computer system along with the complaint form or notice of claim form and other documents relating to the filing of a lawsuit; (2) the summons form and other associated documents are then submitted to the attorney review room where an attorney reviews the complete collection file, including the specific summons form to be filed against a consumer debtor, to ensure the form is the form issued by the county in which the lawsuit is filed or contains language that is consistent with that used in summons forms from the Lake County Superior Court. Bowman has a practice of reviewing court-approved forms and incorporating the language used in such forms into the forms

the firm uses in lawsuits involving consumer debtors. These practices and procedures were used in the state court suit against the Fryes.

## IV. Discussion

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors ... and ... to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To that end, the FDCPA prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The Act also states that a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, and "may not use unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f. In addition, the Act makes it "unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j(a). These are the specific provisions of the FDCPA the Fryes allege to have been violated by Bowman.

 A single violation of the FDCPA is sufficient to establish a debt collector's civil liability. 15 U.S.C. § 1692k; *e.g., Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2nd Cir.1993). A debtor need not show intentional conduct by the debt collector to be entitled to damages. *See, e.g., Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2nd Cir.1996). The FDCPA, however, contains an affirmative defense

under which "[a] debt collector may not be held liable ... if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *Jenkins v. Heintz*, 124 F.3d 824, 832–34 (7th Cir. 1997). A defendant debt collector bears the burden of proving this bona fide error defense. *See, e.g., Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994).

■■■ The Seventh Circuit determines whether a practice violates the FDCPA from the perspective of the "unsophisticated debtor." *See Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir.2000); *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir.1996). "[T]he standard is low, close to the bottom of the sophistication meter." *Avila*, 84 F.3d at 226. The "unsophisticated debtor" is uneducated, uninformed, naive, and trusting. *Pettit*, 211 F.3d at 1060; *Gammon v. GC Servs. Ltd.*, 27 F.3d 1254, 1257 (7th Cir. 1994). There is, however, an objective element of reasonableness in the standard which protects debt collectors from liability for "unrealistic or peculiar interpretations of collection letters." *Gammon*, 27 F.3d at 1257. Under the unsophisticated debtor standard, a statement will not be confusing or misleading unless a significant fraction of the population would be similarly misled. *Pettit*, 211 F.3d at 1060 (citing *Gammon*, 27 F.3d at 1260) (Easterbrook, J., concurring).

It is undisputed that the Fryes are "consumers", Bowman is a "debt collector," and the obligation owed to GE is a "debt" as defined under the FDCPA. 15 U.S.C. § 1692a(3), (5), (6). Thus, there is no question that the FDCPA applies. The questions, rather, are whether Bowman violated the FDCPA by issuing the Summonses to the Fryes and, if so, whether Bowman is shielded by the bona fide error defense.

## A. Whether Bowman Violated the FDCPA

■■■ The Fryes allege that Bowman violated the FDCPA, specifically 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692j(a), because its Summonses misstate the law and the Fryes' rights under the Indiana Rules of Trial Procedure, Trial Rules 4(C), 6(C), 12, 13 and 55. The Fryes maintain that the alleged violations "include, but are not limited to" the aforementioned statutory sections as well as "various sub-parts thereof." (Mem. Law Support Pls.' Mot. Summ. J. at 6.) Though the Fryes need not identify their specific legal theories in their Complaint, in seeking summary judgment they must identify the law which supports their claims. *See Transamerica Fin. Servs., Inc. v. Sykes*, 171 F.3d 553, 555 (7th Cir.1999) ("While a complainant need not specify her theory of liability in a complaint, neither must a court search the United States Code for provisions which might be relevant to a plaintiff's case.") The court will not make the Fryes' claims for them. Any alleged violations of statutory provisions of the FDCPA not specifically identified are considered waived.

Bowman contends it is entitled to summary judgment on the Fryes' claims because (1) as a matter of law, any defects in the Summonses do not constitute a violation of the Act, and (2) even if the Summonses violate the Act, it is entitled to the bona fide error defense.

## 1. Plaintiffs' Contentions

■■■ The Fryes first contend that the Summonses fail to comply with Trial Rule 4(C)'s requirement that a summons contain "[t]he time within which these rules require the person being served to

respond," Ind. T.R. 4(C)(5), because the Summonses state that the recipient has 23 days from the date of "receipt" of the Summonses within which to file an answer, rather than 23 days from the date of mailing. Trial Rule 6(C) states that "[a] responsive pleading required under these rules, shall be served within twenty (20) days after service of the prior pleading." An answer is a responsive pleading. *See* Ind. T.R. 7(A)(1) ("The pleadings shall consist of: (1) a complaint and an answer....").[3] Trial Rule 6(E) allows an additional three days to the time period prescribed in 6(C) when service is by mail. Thus, the rules require that when a pleading is served by mail, a responsive pleading must be served within 23 days of service of the prior pleading. Under Trial Rule 5(B)(2), "[i]f service is made by mail" then "[s]ervice shall be deemed complete upon mailing." Therefore, under Trial Rules 6(C), 6(E) and 5(B)(2), when a pleading is served by mail, service of a responsive pleading is required to be made within 23 days of the date of mailing of the prior pleading. Consequently, the Fryes are correct in their assertion that Bowman's Summonses misstate the time within which they were required by the Trial Rules to serve their answer in the underlying state case. The Fryes contend that this misstatement constitutes a violation of § 1692e because it is a false, deceptive or misleading representation in the connection with the collection of the debt owed GE.

■ The Fryes next contend the Summonses contain a false and misleading statement because they state that the recipient must file an "answer" rather than a "response." The Trial Rules allowed the Fryes to file a number of other responses, including a motion under Trial Rule 12(B), a motion for a more definite statement under 12(E), a motion to strike under 12(F), and a motion for an enlargement of time.[4] In the case of a motion under 12(B), 12(E) or 12(F), the Trial Rules require that such a motion be made before the filing of a responsive pleading.[5] The Fryes' claim, however, hinges on the assumption that "answer" as used in the Summonses means the particular pleading allowed under the Trial Rules rather than the more general meaning of "[a] spoken or written reply, as to a question or demand." Webster's II New College Dictionary 47 (1999). When understood in this

---

3. An answer is just one type of responsive pleading. There are others, for example, a reply to a counterclaim. Ind. T.R. 7(A)(2).

4. In addition, though not at issue here as there is no indication that the amount in controversy exceeded $75,000 or that the parties were of diverse citizenship, under certain circumstances a party who receives a state court summons may respond by filing a notice of removal in the federal district court within which the state court action is pending and then filing a copy of that notice with the state court, pursuant to 28 U.S.C. § 1446.

5. The Fryes offer some evidence that they filed a motion to strike a summons and motion to dismiss the complaint in the underlying state court case, *General Electric Capital Corp. v. Kevin and Mila Frye*, Cause No. 48D02–9809–CP–0651. Their motions were granted and they were awarded attorney's fees incurred in relation to their motions to strike and dismiss. (Mem. Law Supp. Pls.' Mot. Summ. J., App. 3.) Similarly, the plaintiffs in an unrelated case before the Hendricks County Circuit Court moved to strike summonses containing language very similar to that challenged in the instant case. (*Id.*, Apps. 4–5.) The motion was granted and the case was dismissed. (*Id.*, App. 6) The cited documents attached as appendices to the Fryes' motion for summary judgment are not authenticated. Bowman, however, does not challenge their authenticity or admissibility. Whether or not the Fryes or other plaintiffs filed motions to strike and dismiss in state court proceedings is not critical to resolution of the issues presented in the instant case, and the court will assume that the documents are what they purport to be.

general sense, the word "answer" allows for any of the responses mentioned by the Fryes and permitted under the Trial Rules. It is noted that the word "Complaint" is capitalized in the Summonses, whereas, the word "answer" is not, which suggests that the latter word is used in its general sense rather than in the narrower sense urged by the Fryes. In addition, it cannot be said that the unsophisticated debtor would appreciate the differences between the words "answer" and "response" as used in this context, and the Summonses, of course, are not viewed from the perspective of a lawyer or even an educated, sophisticated debtor.

The Fryes contend that the Summonses fail to comply with Trial Rule 4(C)'s requirement that a summons contain "a clear statement that in case of [the defendant's] failure to [answer], judgment by default may be rendered against him [or her] for the relief demanded in the complaint." Ind. T.R. 4(C)(5). The Summonses do state that judgment "will be" entered rather than "may be" entered upon failure to answer. This, the Fryes maintain, also misstates Trial Rules 6 and 55. Bowman apparently has admitted that "Only a Court can decid[e] whether or not a Default Judgment can be entered against a party for failure to file a responsive pleading to a complaint." (Pls.' First Disc. Reqs., Admiss., ¶ 12; Def.'s Resp. Pls.' Admiss., ¶ 12.)[6] Thus, one could conclude that use of the language "judgment will be entered" is misleading and misrepresents the Trial Rules.

The Fryes further contend that the Summonses misrepresent their rights and obligations under Trial Rule 13(A) by stating that if they had a claim against the plaintiff arising from the same transaction or occurrence, they "may be" rather than "shall be" required to assert the claim. Trial Rule 13(A) provides:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if:

(1) At the time the action was commenced the claim was the subject of another pending action; or

(2) The opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this rule.

Thus, though the Fryes were required to state some counterclaims against Bowman in their responsive pleading, under Rule 13(A), they were not required to state any counterclaim that "require[d] for its adjudication the presence of third parties of whom the court [could not] acquire jurisdiction." Nor were they required to state a counterclaim that "was the subject of another pending action." Consequently, to say that the Fryes were required to assert a claim against Bowman arising from the same transaction or occurrence would not necessarily be true.

 Bowman claims that similar misstatements are made in the Summons prepared and served by the Fryes in this case. The Fryes are correct that their Summons is not at issue here. But the

---

**6.** Bowman does not dispute that it admitted Plaintiff's Request for Admission cited by the Fryes, but that admission has not been submitted to the court. Regardless, it is beyond

dispute that whether to enter a default judgment is within the trial judge's discretion. *See, e.g., N. Tex. Steel Co. v. R.R. Donnelley & Sons Co.,* 679 N.E.2d 513 (Ind.Ct.App.1997).

court is troubled by the fact that the Summons used by the Fryes, like the form of summons in the Supreme Court approved Appendix of Forms to the Federal Rules of Civil Procedure as well as the form of summons posted by this court on its website, states that the defendant is required to serve "an answer to the complaint" and, if he fails to do so "judgment by default will be taken against you for the relief demanded in the complaint." Fed.R.Civ. P.App. Forms, Form 1; *http://www. insd.uscourts.gov/forms.htm; see also* Fed. R.Civ.P. 84 (stating that the forms in the Appendix of Forms "are sufficient under the rules"). It is true, though, that in prescribing the form of summons, Rule 4(a) of the Federal Rules of Civil Procedure states that the summons "shall ... notify the defendant that failure to do so *will* result in a judgment by default against the defendant for the relief demanded in the complaint." Fed.R.Civ.P. 4(a) (emphasis added). Nevertheless, just as under the Indiana Rules of Trial Procedure, whether to enter a judgment by default under the Federal Rules of Civil Procedure is within the trial judge's discretion, and judgment by default is not entered against a defendant in every case in which the defendant fails to defend within the time allowed. *See* Fed.R.Civ.P.

55; *Shah v. N.Y. State Dep't of Civ. Serv.,* 168 F.3d 610, 615 (2nd Cir.1999); *Dennis Garberg & Assocs., Inc. v. Pack–Tech Int'l Corp.,* 115 F.3d 767, 771 (10th Cir.1997).

The form of summons in the Appendix of Forms and on this court's website, like the Summonses issued to the Fryes, do not attempt to advise a defendant of every conceivable response. This illustrates the inherent difficulties in attempting to provide all potentially helpful information in a summons. It would hardly seem practical to attach to a summons a copy of the Federal Rules of Civil Procedure and portions of the United States Code or, in the case of a state court proceeding, the Indiana Trial Rules and portions of the Indiana Code to a summons.

## 2. General Arguments

 Before addressing the specific statutory provisions allegedly violated, the court considers some general arguments advanced by the parties. They first debate whether Bowman's Summons is a "communication" as defined under the FDCPA, but the court need not decide this issue because a communication is not a prerequisite for the specific FDCPA violations alleged by the Fryes, see 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692j.[7]

7. It is noted that nowhere in its briefs does Bowman challenge this conclusion. Instead, the law firm argues that the Summons is not a communication "in connection with the collection of a debt." That argument is addressed *infra.* If this issue needed to be resolved, however, there is authority, including the Act's plain language, to support the conclusion that the Summonses are communications under the FDCPA. *See* 15 U.S.C. § 1692a(2) (defining "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."); *Romea v. Heiberger & Assocs.,* 163 F.3d 111, 116 (2nd Cir.1998) (holding notice required by state law as condition precedent to summary eviction proceedings was a "communication" to collect a debt under the Act); *Mendus v. Morgan &*

*Assocs., P.C.,* 994 P.2d 83, 87–88 (Okla.Ct. App.1999) (holding a summons is a communication under the Act); *but see Weinstein v. Fink,* No. 99 C 7222, 2001 WL 185194, at *8 (N.D.Ill. Feb.26, 2001) (concluding that a summons served with the FDCPA validation notice was not a communication under the Act); Federal Trade Commission—Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50100 (Dec. 13, 1988) ("filing or service of a complaint or other legal paper ... is not a 'communication' covered by the FDCPA"). The FTC's official staff commentary is not binding on the courts, however. *See Heintz v. Jenkins,* 514 U.S. 291, 298, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (stating that the Court "cannot

■ Bowman contends that its Summonses cannot constitute a violation of §§ 1692d and 1692e because those provisions require that the conduct or false or misleading representations be "in connection with the collection of a debt," and its Summonses is not a communication "in connection with the collection of a debt." The Summonses themselves do not demand payment. Bowman's assertion, however, contradicts its own statement on the Summonses that "THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND THIS IS AN ATTEMPT TO COLLECT A DEBT." Furthermore, Bowman has admitted that it is a "debt collector" under the FDCPA and was hired by GE to collect the Fryes' debt owed to GE, and the Summonses were sent to the Fryes "[w]hile acting within the scope of [its] employment for GE...." Ergo, the Summonses were communications "in connection with the collection of a debt." Moreover, the Summonses and Complaint should be considered as a whole and treated as one communication under the FDCPA. *See Sprouse v. City Credits Co.,* 126 F.Supp.2d 1083, 1089 n. 8 (S.D.Ohio 2000) ("the summons and complaint served on the Plaintiffs in the state court collection action constituted the initial communication to them ... concerning the debt owed"); *Wiener v. Bloomfield,* 901 F.Supp. 771, 777 (S.D.N.Y.1995) (treating summons, complaint, and debt collector's letter as one communication because they were mailed together). The Complaint was attached to the Summonses, the Summonses refer to the Complaint, and the Complaint and Summonses were served together on the Fryes. *Bailey v. Sec. Nat'l Servicing Corp.,* 154 F.3d 384, 388–89 (7th Cir.1998) (holding that letter informing debtor about current status of account and future due dates but not demanding any payment was not a communication in connection with the collection of any debt), relied upon by Bowman, is inapposite. Therefore, the court finds that the Summonses are communications in connection with the collection of a debt.

The parties dispute whether in construing the general provisions of §§ 1692d, 1692e and 1692f,[8] the court should limit them to the same types of conduct enumerated in the specific subsections. This does pose an interesting statutory construction issue, because generally specific statutory provisions offer assistance in the proper interpretation of a general provision, but the matter is of no consequence here since the court has found that the Summonses contained a misleading representation.[9]

## 3. Section 1692d

■ The Fryes allege that Bowman violated § 1692d which provides in part: "A

give conclusive weight to [a] statement" in the staff commentary); *Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 42 F.Supp.2d 797, 808 (N.D.Ill.1999), *aff'd,* 211 F.3d 1057 (7th Cir. 2000).

8. These statutory provisions are set forth in the attached Appendix.

9. Courts have looked to the types of conduct expressly proscribed by specific subsections of § 1692d in determining whether the challenged conduct is prohibited under the § 1692d's general provision. *See, e.g., Watkins v. Peterson Enterp., Inc.,* 57 F.Supp.2d 1102, 1109 (E.D.Wash.1999) (concluding that debt collector's repeated service of writs did not violate § 1692d). The list of proscribed conduct is not intended to be exhaustive, but the service of the Summonses in the instant case is a "far cry" from the conduct specifically proscribed by § 1692d. *See id.* The same holds true with respect to the conduct listed in § 1692f and, except for the conduct proscribed by subsection (10) of § 1692e, prohibiting the use of "any false representation or deceptive means to collect or attempt to collect any debt," with the remainder of § 1692e as well.

debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Bowman moves for summary judgment on this claim. In their reply brief, the Fryes assert that in addition to the general provision of § 1692d, Bowman also violated subsection (2) which makes the "use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader" a violation of the FDCPA. The Fryes maintain that Bowman's use of literally false statements which limit the consumer's rights establishes that the language satisfies the latter portion of subsection (2). The Fryes, however, have cited no authority to support their position. Nor have they shown that the natural consequence of the use of any of the contested language in the Summonses is to harass, oppress or abuse any person, 15 U.S.C. § 1692d.

The decision in *Jeter v. Credit Bureau,* 760 F.2d 1168, 1178 (11th Cir.1985), is instructive on this issue. The plaintiff in *Jeter* alleged that a debt collection agency's letters to her used language the natural consequence of which was to abuse the reader in violation of § 1692d(2). The first letter said:

Take notice that the above creditor claims you are indebted to him as shown.

Although duly demanded, the same has not been paid. You have ignored our previous contacts.

Therefore, you are hereby notified that unless satisfactory arrangements are made within five (5) days from this date, we will recommend to our client, suit and subsequent action (judgment, garnishment, levy, and/or attachment

proceedings) may be instigated against you by their attorneys.

Respond now and avoid the necessity of further action. An envelope has been enclosed for your convenience.

*Id.* at 1171. The second letter said:

This is our final notice to you before recommending that our client give the account to their attorney for legal action.

Although it may cause you embarrassment, inconvenience and further expense, we will do so if the entire balance is not in this office within the next five days.

To insure proper credit, please return this notice with your payment in the envelope enclosed.

Attend to it now—This is a final notice.

*Id.* The court held that subsection (2) of § 1692d did not encompass the plaintiff's claim. *Id.* at 1178. The court's reasoning was two-fold. First, "when read in context, subsection (2) was meant to deter offensive language which is at least akin to profanity or obscenity. Such offensive language might encompass name-calling, racial or ethnic slurs, and other derogatory remarks which are similar in their offensiveness to obscene or profane remarks." *Jeter,* 760 F.2d at 1178. The court added that its conclusion was consonant with "one of the purposes of the FDCPA that every individual, whether or not he owes the debt, has a right to be treated in a reasonable or civil manner." *Id.* (quotation omitted). *Jeter* offers a persuasive analysis of subsection (2). The contested language in Bowman's Summonses is not obscene, profane or offensive in the least. And, the language and tone of the Summonses are reasonable and civil. The Fryes have not shown that the natural consequence of any of the contested language in the Summonses is to harass, oppress or abuse any person.[10] Therefore,

---

**10.** Nor, for that matter, have they shown that the use of any of the contested language is

unfair or unconscionable in violation of § 1692f. It seems strange to suggest that the

the court concludes that subsection (2) of § 1692d simply is inapplicable to the Fryes' claims.

**4. Section 1692e**

The Fryes allege that Bowman violated § 1692e which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Bowman seeks summary judgment on the claimed violation. For the first time in their reply brief, the Fryes assert that in addition to the general provision of § 1692e, Bowman also violated subsection (2)(A) by falsely representing the character and legal status of any debt, and subsection (10) by using "any false representation or deceptive means to collect or attempt to collect any debt."

The Fryes, however, have not offered any explanation as to how the Summonses violated subsection (2)(A), and that subsection's applicability is not apparent to the court. They challenge neither the validity nor the amount of the debt owed GE. The use of misleading statements in the Summonses, though, arguably may have violated subsection (10).

■ Bowman argues that § 1692e only prohibits knowing and intentional misrepresentations. The court disagrees. In *Transamerica Financial Services, Inc. v. Sykes,* 171 F.3d 553, 555 (7th Cir.1999), the court remarked in passing in a footnote that "a misrepresentation under 15 U.S.C. § 1692e must be knowing and intentional." The court did not directly address whether a § 1692e misrepresentation has to be knowing and intentional as the plaintiff did

not expressly allege a violation of that provision of the FDCPA. In *Gearing v. Check Brokerage Corp.,* 233 F.3d 469, 473 (7th Cir.2000), however, the court said that "Section 1692e applies even when a false representation was unintentional." [11] Other courts are in accord. *See, e.g., Kaplan v. Assetcare, Inc.,* 88 F.Supp.2d 1355, 1361 (S.D.Fla.2000). This view is consistent with the plain language of § 1692e which contains no reference to knowledge or intent. In contrast, specific subsections of § 1692e do make knowledge or intent an element of the violation. *See, e.g.,* 15 U.S.C. § 1692d(5) ("Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991) (quotation omitted). The court concludes that § 1692e does not require that the misrepresentations be knowing or intentional.

The Fryes contend that the alleged defects in Bowman's Summonses are "literally false" and, consequently, *Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057 (7th Cir.2000), and *Gammon v. GC Servs. Ltd.,* 27 F.3d 1254, 1257 (7th Cir.1994), are inapposite. The Fryes are not entirely correct on this point. The statement that the Fryes had 23 days from receipt of the Summonses within which to respond was literally false. But as for the

use of language consistent with that used in forms of summons available from state court clerks' offices is unfair or unconscionable.

**11.** In *Simmons v. Miller,* 970 F.Supp. 661, 665 (S.D.Ind.1997), the undersigned took the

view that § 1692e required that the misrepresentation be knowingly and intentionally made. That case was decided before the Seventh Circuit had spoken on the issue. Now it has and has said that knowledge and intent are not required.

other challenged statements in the Summonses—that the Fryes were to file an "answer," that failure to do so and judgment "will be" entered against them, and that they "may be" required to assert a counterclaim in their answer—these were not literally false. Rather, they may have had the potential to mislead or deceive. Thus, these statements are properly evaluated under the unsophisticated debtor standard of *Pettit* and *Gammon.* Under that standard, as stated, a statement will not be confusing or misleading unless a significant fraction of the population would be similarly misled. *Pettit,* 211 F.3d at 1060 (citing *Gammon,* 27 F.3d at 1260) (Easterbrook, J., concurring).

 As the Fryes themselves acknowledge, "if a statement is not literally false, the court may find it is impliedly misleading only if presented with evidence of actual consumer deception." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir.1996) (citing *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 14 (7th Cir.1992)); *see also Pettit,* 211 F.3d at 1060–1062 (concluding summary judgment was properly granted where plaintiff failed to present any evidence that collection agency's collection letter would mislead unsophisticated debtor into believing agency was a credit bureau where she failed to present any evidence other than her own self-serving testimony that the letter had misled her). A plaintiff alleging that a statement is confusing or misleading in violation of the FDCPA must therefore offer evidence that the statement would confuse or mislead the unsophisticated debtor. *Pettit,* 211 F.3d at 1061–62. For the most part, the Fryes' challenge statements in the Summonses that are not literally false. Having chosen to argue only that the challenged language is literally false, however,

they have not offered any evidence to create a genuine issue as to whether a significant fraction of the population would have been misled by that language. For this reason, Bowman should be granted summary judgment on the Fryes' claims under § 1692e relating to the contested language in the Summonses, with the exception of the statement regarding the amount of time within which they had to answer the Summonses.

## 5. Section 1692j(a)[12]

The Fryes claim that Bowman violated § 1692j which makes it "unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j(a). Bowman contends that it is entitled to summary judgment on this claim. The Fryes have not directly responded to this contention. Bowman is right: The Fryes have offered no evidence to make out a claim of a violation of § 1692j(a). In addition, the court is at a loss as to how this provision would apply to the Fryes' claims. Surely, they are not suggesting that Bowman's use of the Summonses was an effort to create the false belief that the Madison County Superior Court was participating in the collection of the debt. Therefore, Bowman should be granted summary judgment on this claim.

## B. Whether Bowman is Entitled to the Bona Fide Error Defense

 Bowman argues that even if its Summonses violate the FDCPA, it is enti-

---

**12.** Lest the reader think the court inadvertently omitted a section addressing § 1692f, it is noted that all of the parties' arguments pertaining to claims under § 1692f are covered either in the "General Argument" section or other sections of this entry.

tled to the bona fide error defense. The Fryes contend that Bowman's use of allegedly defective Summonses were mistakes of law for which the bona fide error defense is unavailable.

 As stated, a debt collector is shielded from liability under the FDCPA if it can show by a preponderance of the evidence that its violation of the Act was (1) not intentional and (2) resulted from a bona fide error despite procedures reasonably adapted to avoid any such violation. 15 U.S.C. § 1692k(c); *Jenkins v. Heintz*, 124 F.3d 824, 832–34 (7th Cir.1997). Some courts have interpreted the bona fide error defense as applicable only to clerical errors, *see, e.g., Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir.1982); *Patzka v. Viterbo College*, 917 F.Supp. 654, 659 (W.D.Wis.1996), analogizing to the bona fide error defense in the Truth In Lending Act ("TILA"), 15 U.S.C. § 1640(c), which defines bona fide errors to include clerical errors and expressly excludes an "error of legal judgment with respect to a person's obligations under [TILA]." However, as the Seventh Circuit has noted, the FDCPA's bona fide error provision does neither of the two. *Jenkins*, 124 F.3d at 832 n. 7 (holding that defendant debt collectors were entitled to the bona fide error defense because they were mistaken about the legality of the amount sought by their client for force placed insurance). In addition, the stated purposes of the two statutes are different. *See* 15 U.S.C. § 1601(a) (stating TILA's purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit"); 15 U.S.C. § 1692(e) (stating the purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors ... and to protect consumers against debt collection abuses"); *Jenkins*, 124 F.3d at 832 n. 7. In this court's view, the FDCPA bona fide error defense should not be limited to clerical errors.

Courts have held that mistakes of law are not protected by the FDCPA's bona fide error defense. *See, e.g., Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451–52 (8th Cir.2001); *Pipiles v. Credit Bureau, Inc.*, 886 F.2d 22, 27 (2nd Cir.1989); *Baker*, 677 F.2d at 779; *Farley v. Diversified Collection Servs., Inc.*, No. 98 C 2108, 1999 WL 965496, at *9 (N.D.Ill. Sept.30, 1999). Both *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (holding FDCPA applies to lawyers regularly engaged in consumer debt collection litigation), and *Jenkins v. Heintz*, 124 F.3d 824 (7th Cir.1997), however, leave open the possibility that errors arising from mistakes of law can be shielded by the bona fide error defense. The *Jenkins* plaintiff argued that the bona fide error defense did not cover errors of legal judgment. 124 F.3d at 832. The Seventh Circuit rejected this argument, although it found no evidence that the defendants exercised any legal judgment with respect to the alleged FDCPA violation. *Id.*

In what might be the first appellate decision to address the bona fide error defense and an oft cited decision, in *Baker v. G.C. Services Corp.*, the Ninth Circuit said that "mistake about the law is insufficient *by itself* to raise the bona fide error defense." 677 F.2d at 779 (emphasis added). The defendant in *Baker* asserted the bona fide error defense based on the mistaken advice of counsel. *Id.* at 779. The court rejected the defense and stated that "Appellant only presented evidence that, at best, might show it had been mistaken about the law. This is insufficient by itself to support the bona fide error defense pursuant to 15 U.S.C. § 1692k(c)." *Id.* The court's use of the language "by itself" suggests that a mistake of law can under certain circumstances entitle a debt collec-

tor to the bona fide error defense. Another district court has reached this conclusion, see *Watkins v. Peterson Enterprises, Inc.*, 57 F.Supp.2d 1102, 1107–08 (E.D.Wash.1999).

The plaintiffs in *Watkins* alleged, *inter alia*, that the defendant debt collector used unfair means to collect debts in violation of the FDCPA by using pay orders instead of obtaining judgments against garnishee defendants. *Id.* at 1106. A pay order was an order from a state judge directing the plaintiff's employer to pay a sum to the court. *Id.* at 1105. The debt collector presented evidence that it used the pay orders because it was required to use them by the state courts. *Id.* at 1107. The court distinguished *Baker*, finding no indication that the debt collector's practices in that case had been approved by federal or state officials. Concluding that the debt collector's mistake of law arose from an official interpretation of state law, the court held that the debt collector was entitled to the bona fide error defense. *Id.* at 1107–08.

Bowman maintains that the language used in its Summons is similar if not identical to that used in summons forms issued by a large number of clerks of state courts in Indiana. Bowman has submitted a "[c]ollection of [such] summons forms" to the court as the first attachment to its Appendix Of Materials In Opposition To Plaintiffs' Motion For Class Certification. None of these documents have been authenticated. The Fryes, however, do not contest either the authenticity or admissibility of the documents. Rather, they object to Bowman's factual assertion that "[i]n at least 60 of Indiana's 92 counties (including Madison County, the venue of the underlying case), the Clerk of the Superior and/or Circuit Court has supplied to practitioners and [the] public a form summons which contains language identical or similar to that in the Summons at issue."

(Def.'s Statement Additional Material Facts No. 17.) The Fryes argue that this assertion insinuates that all of the counties' summonses contain the same language as that challenged by them. (*See* Pls.' Reply & Resp. to Def.'s Statement Of Additional Material Facts No. 17.) The Fryes are correct: Not all of the counties' summons forms contain language the same or similar to all of the language that they contest in Bowman's Summonses. Nevertheless, language identical or substantially similar to all of the language in Bowman's Summonses challenged by the Fryes is contained in many of the summons forms compiled and attached to the Defendant's Appendix.

To begin with, the language in Bowman's Summonses challenged by the Fryes is identical in all respects to the language used in the summons form used by the Clerk of the Superior Court of Lake County, Civil Division, Room Three. (Aff. of Glenn S. Vician, dated 11/24/99, ¶¶ 2–3(h) & Ex. H.) The challenged language is similar to that used in the summons form utilized by the Clerk of the Superior Court of Madison County. (*Id.* ¶¶ 2–3 & Ex. D.) In particular, the Madison County summons form indicates that: "You [the defendant] must answer the complaint in writing, by you or your attorney, within Twenty (20) days, (23 days if service is by mail), commencing the day after you receive this summons, or judgment will be entered against you for what Plaintiff has demanded." (*Id.*) In addition, the same or similar language is used in the summons forms of other counties. For example, the summons form for the Circuit Court of Benton County states that "You must *answer* the Complaint ... *within twenty (20) days, commencing the day after you receive this Summons, or* judgment *will be* entered against you for what the Plaintiff has demanded." (Emphasis added). The summons form for the

Brown Circuit Court states: "You must *answer* the complaint in writing ... within 20 (twenty) days commencing the day after you receive this summons, (if the summons is received by mail you have 23 (twenty-three) days commencing the day after you receive this summons)...." (Emphasis added). The summons form for the Grant County Circuit Court provides: "You or your attorney must *answer* the attached Complaint in writing by filing such *answer* with the Clerk of the Court within twenty (20) days, commencing the day after you receive this Summons." (Emphasis added). The summons form for the Superior Courts I and II of Jasper County state in part: "If you have a claim for relief against the plaintiff arising from the same transaction or occurance (sic), you *may* assert it by filing a counter claim against the defendant." (Emphasis added). The summons form for the St. Joseph Circuit Court states in part: "You must *answer* the complaint in writing ... within twenty (20) days *commencing the day after you receive this summons, (you have twenty-three (23) days to answer if this summons was received by mail)*, or judgment *will be* entered against you for what the plaintiff has demanded." (Emphases added).

Thus, Bowman has produced uncontradicted evidence that the language challenged by the Fryes in its Summonses was consistent with language in the summons forms available from state court clerks' offices submitted in this case. As a result, the alleged defects or mistakes in the Summonses were tacitly approved by the state court clerks. Following the reasoning of *Watkins* and *Baker's* implication that mistakes of law may in some circumstances entitle a debt collector to the defense, the court finds that Bowman is entitled to raise the bona fide error defense to the alleged violations of the FDCPA, provided Bowman proves the violations were unintentional and the maintenance of procedures reasonably adapted to avoid such errors. This conclusion is consonant with the Supreme Court's indication in *Heintz v. Jenkins* that the FDCPA's provisions should be read in such a way as to avoid anomalies in lawyers' litigation activities. *See* 514 U.S. at 296–97, 115 S.Ct. 1489; *Veach v. Sheeks*, No. IP 00–1793–C H/K, Entry On Motion For Judgment As A Matter Of Law at 6–7 (S.D.Ind. Jan. 4, 2002) (Hamilton, J.).

Bowman maintains that the requisite intent is the intent to violate the FDCPA, citing *Jenkins*, 124 F.3d at 832. *Jenkins* does not speak directly to this matter, and the court's own research uncovers no Seventh Circuit decision directly addressing whether the debt collector must intend the act that is challenged or intend to violate the FDCPA. Nevertheless, *Jenkins* does contain language which seems to support Bowman's position. *See id.* at 832 (stating that the FDCPA requires a reasonable inference that "defendants actually knew, and then intentionally made a false representation as to the character of Jenkins' debt"), 835 ("Jenkins did not present evidence from which a jury could reasonably conclude that the defendants knew of the unauthorized nature of the force placed insurance and intentionally falsely represented the character of Jenkins' debt.")

It bears noting, however, that in *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir.1974), the Seventh Circuit concluded that "intentional" as used in the TILA's bona fide error defense provision meant "voluntary, deliberate acts and omissions." *Id.* at 1166–67. The language used in TILA's bona fide error defense provision regarding intent is virtually identical to that used in the FDCPA's bona fide error provision. *Compare* 15 U.S.C. § 1640 ("A creditor ... may not be held liable in any action brought under this section ... if the creditor ... shows by a

preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."), *with* 15 U.S.C. § 1692k(c). In reaching this conclusion, though, the court relied on the contextual placement of the provision within the TILA, the existence of a separate provision for criminal liability which required a willful and knowing violation, the language of the provision listing examples of bona fide errors, and legislative history indicating that the bona fide error provision was intended to reach clerical errors only, and not errors of law. *Haynes,* 503 F.2d at 1166–67. In contrast, the FDCPA does not contain a criminal liability provision, and neither the language of the FDCPA's bona fide error provision nor the legislative history suggests an intent to limit the defense to clerical errors. So, although courts interpreting a provision of the FDCPA often look to interpretations of an analogous provision in TILA, the court believes that the Seventh Circuit would not interpret the term "intentional" in the FDCPA's bona fide error provision in the same way as it has interpreted the term under the TILA's bona fide error provision.

The Sixth Circuit has addressed the intent issue and said: "The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional. To hold otherwise would effectively negate the bona fide error defense." *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 402 (6th Cir.1998); *accord Edwards v. McCormick,* 136 F.Supp.2d 795, 800 (S.D.Ohio 2001) (follow-

ing *Lewis* ). The Sixth Circuit's view of the requisite intent comports with the statute's language, 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable . . . if the debt collector shows . . . that the violation was not intentional"), and makes sense to this court. Moreover, the Fryes have not argued that the intent is anything other than the intent to violate the FDCPA. Bowman has presented evidence that its violations of the Act were unintentional.[13] This evidence has not been rebutted by the Fryes.

Bowman has offered evidence that it maintains procedures not only to ensure overall compliance with the FDCPA, but more significantly for purposes of this case, that it has in place procedures reasonably designed to avoid errors in summonses that could result in FDCPA violations and, moreover, those procedures were followed in the state court lawsuit filed against the Fryes. The Fryes argue that its procedures "apparently are not good enough" since two state courts found Bowman's summonses to be improper in late 1998 and early 1999, and yet, Bowman persisted in using the same summons form. With all due respect to the decisions of the state trial court judges, the determination that the summonses should be stricken for lack of compliance with certain Indiana Rules of Trial Procedure has little bearing on whether Bowman's procedures are reasonably adapted to avoid errors in its summonses. The FDCPA does not require that the procedures be fool proof; rather, it is enough that the procedures are "reasonably adapted to avoid any such error." 15 U.S.C.

---

**13.** The Fryes challenge the factual assertion in Bowman's Statement of Additional Material Facts No. 18 ("In the case of the Summonses issued to Plaintiffs . . . the Law Firm did not knowingly issue Summonses that were . . . potentially in violation of the FDCPA.") as conclusory. The evidence cited

to support this assertion (*see* Vician Aff. ¶ 4–11 & Ex. A), however, is sufficient to establish that Bowman did not intend to violate the FDCPA. The Fryes have not offered any evidence to raise a genuine issue of fact as to Bowman's intent.

§ 1692k(c). Moreover, the state court orders contain no legal reasoning or citation to legal authority, and state trial court decisions are not binding on higher state courts, other state trial courts, or this court. *See Carmichael v. Siegel,* 754 N.E.2d 619, 627 n. 1 (Ind.Ct.App.2001) (stating that it is inappropriate to cite trial court decisions as precedent); *Ind. Dep't of Natural Res. v. United Minerals, Inc.,* 686 N.E.2d 851, 857 n. 1 (Ind.Ct.App.1997) (same).

Bowman's evidence that it maintains procedures reasonably adapted to avoid the errors in the Summonses claimed by the Fryes and that these procedures were followed in the underlying suit against the Fryes remains unrebutted. Accordingly, the bona fide error defense shields Bowman from liability for the FDCPA violations and Bowman should be granted summary judgment on all of the Fryes' claims under the FDCPA.

## V. Conclusion

This test of minute violations of the FDCPA has come to an end. Plaintiffs' motion for summary judgment is DENIED, and Defendant's motion for summary judgment will be GRANTED.

Judgment shall be entered accordingly.

ALL OF WHICH IS ORDERED this 28th day of January 2002.

### *Appendix*

15 U.S.C. § 1692d provides:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692e provides in relevant part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State....

(2) The false representation of—(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an at-

torney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—(A) lose any claim or defense to payment of the debt; or (B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating ... to any person credit information which is known or which should be known to be false....

(9) The use ... of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer ... that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose....

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency....

15 U.S.C. § 1692f provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other

postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.